**In re W.C. PEELER CO., INC., Debtor.**

**Bankruptcy No. 94–74550.**

United States Bankruptcy Court,
D. South Carolina.

April 7, 1995.

Reid B. Smith, Smith and Moreno, Columbia, SC, for debtor.

D. Randolph Whitt, Sherrill and Rogers, P.C., Columbia, SC, for creditor Federal Financial.

### ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter comes before the court for a confirmation hearing on the Debtor's Second Amended Plan. Timely objections to confirmation were made by Federal Financial Company (Federal Financial), NationsBank, and Parts Industries Corporation (Parts Industries).

Testimony at the hearing in this matter on March 27, 1995 was given by Mr. John Camp, President of the Debtor, and by James C. Harrison, Jr. Based upon the testimony presented, pleadings, matters of record, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

The relevant facts in this case are undisputed. The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on September 23, 1994. The Debtor's sole asset is a parcel of improved real property which contains a warehouse. The tenant in this warehouse under an unexpired lease is Parts Industries. NationsBank hold a first mortgage on the real estate in question in an amount in excess of $600,000. Federal Financial holds a second mortgage on the warehouse property in any amount in excess of $200,000. Both mortgage creditors are fully secured.

The Debtor's only unsecured claim is held by James C. Harrison, Jr. This claim amounts to less than $2,000. Mr. Harrison is an attorney at law who represented the Debtor in the state court mortgage foreclosure action which was pending at the time of the Debtor's bankruptcy filing. Mr. Harrison remains counsel of record in that matter and has continued to represent and tender bills to the Debtor. In all likelihood, Mr. Harrison will resume representing the debtor in the state court foreclosure.

Mr. Harrison is the only creditor who voted in favor of the Debtor's second amended plan.

### PLAN CONFIRMATION REQUIREMENTS

Because of the negative votes of the creditors other than Mr. Harrison, the Debtor's second amended plan can only be confirmed through the "cramdown" provisions of § 1129(b). However, an essential prerequisite to a "cramdown" of the objecting creditors is compliance with the requirements of § 1129(a), except for subsection 1129(a)(8). These requirements include § 1129(a)(10) which mandates

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

The Bankruptcy Court for the Southern District of New York recently addressed the purpose of § 1129(a)(10) in *In re 500 Fifth Avenue Associates*, 148 B.R. 1010 (Bkrtcy. S.D.N.Y.1993). The court noted

> Section 1129(a)(10) operates as a statutory gatekeeper barring access to cramdown where there is even one impaired class accepting the plan. Cramdown is a powerful remedy available to plan proponents under which dissenting classes are compelled to rely on difficult judicial valuations, judgments, and determinations. The policy underlying § 1129(a)(10) is that before embarking upon the tortuous path of cramdown in compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan. *In Re 266 Wash-*

*ington Associates*, 141 B.R. 275, 287 (Bankr.E.D.N.Y.1992).

148 B.R. at 1020.

■ The Debtor bears the burden of proving compliance with each of the requirements of Section 1129(a). *In re Guilford Telecasters, Inc.*, 128 B.R. 622 (Bkrtcy. M.D.N.C.1991). Federal Financial asserts that any impairment of Mr. Harrison's claim is artificial and is insufficient to comply with subsection (a)(10). As noted above, subsection (a)(10) is designed to require some indicia of support by creditors who are adversely impacted by the plan before allowing cramdown. The Bankruptcy Court for the District of Connecticut concluded that allowing subsection (a)(10) to be satisfied by an "engineered impairment so distorts the meaning and purpose of that subsection that to permit it would reduce (a)(10) to a nullity. Certainly acceptance of a plan by a slightly impaired class would contribute very little to an indicia of creditor support for the plan." *In re Lettick Typografic, Inc.*, 103 B.R. 32, 39 (Bkrtcy.D.Conn.1989) (citations omitted).

The Eighth Circuit Court of Appeals has recently considered the issue of artificial impairment in *In re Windsor on the River Associates, Ltd.*, 7 F.3d 127, 29 C.B.C.2d 1583 (8th Cir.1993). The Eighth Circuit also concluded that allowing an artificial impairment to satisfy subsection (a)(10) would nullify the protections it was designed to provide. Further, the Eighth Circuit found that such a reading of subsection (a)(10) would be inconsistent with the underlying policy of the Bankruptcy Code of promoting consensual reorganizations in Chapter 11 cases. Moreover, the court noted that allowing artificial impairment would in fact promote "side dealing" between debtor and selected creditors in contravention of the established policy under the Code disfavoring such arrangements. This concern is particularly highlighted by the realization that the literal definition of impairment includes an alteration of the creditor's rights which improves its position.

The Eighth Circuit described the questions of artificial impairment and artificial classifications as "closely related" in the *Windsor on the River* case. The Eighth Circuit has disapproved of both artificial classification and artificial impairment in assessing compliance with § 1129(a)(10). The Fourth Circuit Court of Appeals has also disapproved artificial classifications. *In re Bryson Properties*, 961 F.2d 496 (4th Cir.1992). It is likely that the Fourth Circuit would also concur in the Eighth Circuit's judgment that artificial impairment is inappropriate in attempting to satisfy the requirements of § 1129(a)(10). This conclusion is strengthened by a footnote contained in the *Bryson Properties* opinion. In footnote 8 at page 501 of this opinion, the court held that: priority tax claimants which receive preferential treatment under the Code (see 11 U.S.C. § 1129(a)(9)(C)) are not an impaired class that can accept the plan and *"bind other truly impaired creditors to a cramdown."* (emphasis added). The Fourth Circuit's employment of the phrase "truly impaired creditor" indicates that the court anticipates something more than a literal reading of the Code's definition of impairment which includes any alteration, even an improvement, of the creditor's rights.

## ANALYSIS

In applying these principles to the facts of the instant case, I find that the Debtor has failed to meet its burden of proving that Mr. Harrison is a truly impaired creditor whose acceptance can consign the other creditors to a cramdown. The amount of Mr. Harrison's claim is quite small in relation to those of the other creditors. Under the Second Amended Plan, the claim is to be paid in full, with interest, over the relatively brief period of six months.

■ In order for a claim to be considered "impaired" under 1129(a)(10) so as to cause "cramdown" of another creditor's claim, it is incumbent upon the debtor to show to the satisfaction of the court that it is necessary to impair the accepting class for economical or other justifiable reasons. In other words, the debtor must prove that impairment of the particular claim is needed for it to realize and achieve reorganization, not just to trigger "cramdown". Without this showing, a debtor could manipulate the bankruptcy code to create or to engineer an artificially impaired claim and this constitutes bad faith. The Debtor was unable to advance any con-

vincing economic justification or other acceptable reason for the delay in payment to Mr. Harrison. If the Debtor's plan were confirmed, the Debtor would have a surplus in the rental income of approximately $2,500. per month. This surplus would have allowed the Debtor to have the funds available on hand for immediate payment of Mr. Harrison's claim upon the effective date of the plan.

In viewing the totality of the circumstances of Mr. Harrison's claim, its treatment under the plan, its size in relation to other claims, and the balance of the factors set forth above, I cannot find that the debtor has proven that Mr. Harrison is a truly impaired creditor for purposes of allowing the Debtor access to the cramdown provisions of the Code. The Debtor's failure to meet the requirements of § 1129(a)(10) prevents confirmation of the second amended plan or any other plan that "cramdowns" the claim of Federal Financial. It is therefore unnecessary to reach the other objections to confirmation asserted by the creditors.

**IT IS THEREFORE ORDERED** that confirmation of the Debtor's second amended plan is hereby denied.

Pursuant to the parties' previous stipulation that in the event the Debtor's plan was not confirmed, the Debtor's case should be dismissed under the terms of the motion to dismiss filed earlier by Federal Financial,

**IT IS FURTHER ORDERED** that the above captioned Chapter 11 case is dismissed with prejudice for a period of 180 days as to the filing of a petition under any chapter of the Bankruptcy Code in this or any other district.