**In re FUR CREATIONS BY VARRIALE, LTD., Debtor.**

**Bankruptcy No. 94 B 21304 (JJC).**

United States Bankruptcy Court, S.D. New York.

Nov. 15, 1995.

Julian Alan Schulman, Suffern, New York, Susan Mills Richmond, New City, New York, for Debtor.

Michael Gottlieb, Middletown, New York, for Bank of New York.

## *DECISION DENYING CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION*

JOHN J. CONNELLY, Bankruptcy Judge, Sitting by Special Designation.

At issue is whether the Debtor's Amended Plan of Reorganization (the "Plan") can be confirmed over the objection of the largest secured creditor, Bank of New York ("BNY"). BNY objects on various grounds including: that the claim of a second secured creditor, Union State Bank ("Union State"), is improperly impaired under the Plan and that the Plan has otherwise failed to obtain the support of a requisite impaired accepting class; that the Plan has not been proposed in "good faith;" that the Plan does not meet the "best interest" test; that the Plan is not feasible; and that the Plan is not "fair and equitable" and accordingly cannot be "crammed down" over the objection of dissenting creditors.

For the following reasons, this Court finds that the Plan has failed to obtain the affirmative vote of at least one impaired accepting class and that, alternatively, the Plan does not meet the cram down requirements of 11 U.S.C. § 1129(b).

*Background*

As the name implies, the Debtor is in the fur business. The bankruptcy filing was precipitated, in part, by a series of tragic events which beset the Varriale family over the last few years and changed the course of this once proud institution in the fur industry. The bankruptcy filing came shortly after the death of Mr. Varriale, the founder and one of the principals of the Debtor. Since her husband's death, Mrs. Deanna Varriale has managed the business as its president, although, understandably, her attention was at times elsewhere. During this time period, the Debtor's business struggled, ultimately leading to the default by the Debtor on an obli-

gation owing to BNY. The obligation owed to BNY stems from a 1988 loan that the Debtor obtained for approximately $1.2 million. The loan was collateralized by a security interest in all of the Debtor's assets, including the most significant asset, its inventory of fur coats, as well as furniture, fixtures, equipment, accounts receivable and supplies. *See* Memo of Law in Opp. to Conf. of Plan of Reorg. at 2. During the five years prior to the filing, the Debtor paid down the BNY loan by approximately $700,000, from $1.2 million to approximately $500,000. *See* Debtor's Prop. Findings of Fact and Conclusions of Law at 1.

On July 25, 1994, the Debtor filed its voluntary chapter 11 petition. Shortly thereafter, BNY filed various motions including a motion to dismiss the case as a bad faith filing and, alternatively, for relief from the automatic stay. This Court denied BNY's motion to dismiss with respect to a bad faith filing and, pursuant to an agreement between the parties, agreed to carry on the calendar BNY's alternative request for relief from the automatic stay. On February 7, 1995, this Court approved the Amended Disclosure Statement and scheduled the confirmation hearing for February 28, 1995. A confirmation hearing was held on February 28, 1995, after which the parties submitted post-trial memoranda in May, 1995.

The Plan establishes five classes of claims and interests, in addition to administrative expenses and priority tax claims. They are as follows:

Class 1 contains the priority non-tax claims which the Debtor estimates will be in the vicinity of $1,675. The Plan proposes to pay these claims in full, in cash, on the Effective Date.[1] Accordingly, this class is not impaired.

Class 2 contains BNY's secured claim, which is secured by the Debtor's inventory, furniture, fixtures, equipment, accounts receivable and supplies. The parties have stipulated for purposes of the confirmation hearing that the value of the collateral (and hence the secured portion of BNY's claim) is $225,000. *See* Amended Disclosure Statement at Section 2.2. The Plan proposes to pay BNY's secured claim over ten years, with interest, in 40 equal installments of $8,964 commencing at the end of the first calendar quarter after the Effective Date. Under the Plan, BNY will retain its lien on the Debtor's inventory and substantially all of its assets, and will receive a replacement lien on newly acquired inventory. This class is impaired and has voted against confirmation of the Plan.[2]

Class 3 contains Union State's $2,370 secured claim, which is secured by a lien on the corporate vehicle used by both the Debtor and Mrs. Varriale personally. The Plan proposes that Union State will retain its lien on the automobile and receive payment in full, albeit without interest or attorneys' fees, in 12 equal monthly installments commencing at the end of the first month after the Effective Date. Each payment will be equal to 8.3% of the allowed amount of Union State's claim as of the Effective Date. This class is impaired and has voted in favor of confirmation of the Plan.

Class 4 contains the claims, aggregating roughly $1,097,963, of the general unsecured creditors. This amount includes any allowed unsecured claim held by BNY, and includes a $647,218 unsecured claim held by Deanna Varriale, an insider, or entities controlled by her. The Plan provides that payment of Mrs. Varriale's unsecured claim is to be delayed until all payments required to be made under the Plan are paid. The Debtor has proposed to pay the unsecured claimants five (5%) percent of their allowed claims, without interest, in twenty quarterly installments beginning 240 days after the Effective Date.

Class 5 contains the common stock interests of the Debtor. Those interests are currently held by the two sons of Mrs. Varriale, although BNY has alleged in a pending state

---

1. The "Effective Date" is defined as the 120th day following the Confirmation Date, as defined in Article 1 of the Plan.

2. BNY's claim was guaranteed by Mrs. Deanna Varriale and her late husband. BNY has obtained a judgment against Mrs. Varriale on this

guaranty. The Plan contemplates that payments made to BNY by the Debtor will cease or be reduced to the extent that BNY is able to recover in full or in part from Mrs. Varriale under the judgment. *See* Plan at Article 6.6.

court proceeding that the transfer of these shares constitutes a fraudulent conveyance.[3] The Plan proposes that the existing commons shares of the Debtor will be canceled; this class is deemed to reject the Plan. Nonetheless, the Plan proposes that the Varriale sons will obtain, pro-rata, all of the stock of the reorganized entity in exchange for their infusing $25,000 in cash to the Debtor on or before the Effective Date. The two Varriale sons intend to borrow the $25,000 from Mrs. Varriale's mother in order to complete the transaction.

Although not included in their own class, the Plan provides for payment in full of priority administration expenses, including professional fees, which are estimated to be around $90,000. The Plan also provides for the full payment of priority tax claims, which are estimated to be around $41,000, on the Effective Date or, at the Debtor's election, in equal quarterly installments over a six year period. It should be noted that the Internal Revenue Service ("IRS") filed a $12,327.90 proof of claim after the bar date that is not included in the prior amount. BNY contends that this amount has to be paid and the Plan's failure to provide for this amount undermines the Plan's feasibility. The Debtor questions whether it will have to pay this amount, but nonetheless contends that it is able to if it is ultimately determined that it must. *See* Debtor's Post–Conf.Hrg.Brf. at 14–15. As will be discussed below, this revelation is less probative with respect to the feasibility of the Plan than it is to the Debtor's motive for the treatment of Union State's claim.

As will be more fully elaborated below, BNY objects to confirmation on the basis that the Plan violates 11 U.S.C. §§ 1129(a)(3), (7), (10) and (11) and 1129(b).

## Discussion

### A. *Confirmation Generally*

When Congress enacted the Bankruptcy Code in 1978, it set forth the general rules governing confirmation of a plan of reorganization in 11 U.S.C. § 1129. As one court recently described the process:

> [t]here are two ways in which a plan of reorganization may be confirmed. The plan may be agreed to by the affirmative vote of all impaired classes. 11 U.S.C. § 1129(a)(8). This consensual means of plan negotiation and confirmation is among the paramount goals of chapter 11. Yet should an impaired class vote against confirmation, all hope is not lost, for a plan can be confirmed over the vote of dissenting classes of claims under the cramdown provision of 11 U.S.C. § 1129(b) if all the requirements of subsection (a) of section 1129 are satisfied, excluding (a)(8), and the bankruptcy court is satisfied that the plan does not discriminate unfairly and is fair and equitable with respect to each class of impaired claims that has not accepted the plan.

*In re 500 Fifth Avenue Associates*, 148 B.R. 1010, 1017 (Bankr.S.D.N.Y.1993), *aff'd*, 1993 WL 316183 (S.D.N.Y.1993) (footnote omitted) (*citing In re 266 Washington Associates*, 141 B.R. 275, 282 (Bankr.E.D.N.Y.1992), *aff'd*, 147 B.R. 827 (E.D.N.Y.1992); *In re Cantonwood Associates Ltd. Partnership*, 138 B.R. 648, 652 (Bankr.D.Mass.1992)). Elementarily stated, assuming all other requirements of 11 U.S.C. § 1129(a) are satisfied, a court: 1) must confirm a plan if it garners the unanimous support of each impaired creditor class, 2) may not confirm a plan absent the affirmative vote of at least one impaired class (not counting the votes of insiders or those impaired classes that are deemed to reject)[4] and 3) must confirm a plan that garners the support of at least one impaired class and meets the criteria for cram down in Section 1129(b). *See* 11 U.S.C. § 1129.

In this case, only one of the three classes entitled to vote, Class 3, voted in favor of the

---

**3.** In light of the fact that the issue of who currently owns the Debtor's shares is not outcome determinative, I will assume without deciding that the two Varriale sons own the shares.

**4.** A class of claims accepts a plan if at least two-thirds in amount and more than one half in number of allowed claims vote in favor of the plan. 11 U.S.C. § 1126(c). In addition, a class is deemed to reject a plan if the class does not receive a distribution under the plan. 11 U.S.C. § 1126(g).

Plan. Class 3 houses the $2,370 secured claim of Union State which the debtor proposes to pay without interest in twelve equal installments. BNY's claim, which was partially secured and unsecured by virtue of 11 U.S.C. § 506(a), controlled the vote in classes 2 and 4; those classes voted against the Debtor's Plan. Accordingly, if this Plan could be confirmed, it would have to be confirmed under the cram down provision of 11 U.S.C. § 1129(b).

With this backdrop in place, we turn to BNY's objection which, not surprisingly, challenges *in seriatim* the legitimacy of the Class 3 vote, the debtor's ability to satisfy the other elements of 11 U.S.C. § 1129(a) and lastly the debtor's ability to meet the elements of 11 U.S.C. § 1129(b).

B. *Good Faith, Feasibility and the "Best Interest" Test Do Not Bar Confirmation of the Plan*

BNY argues, among other things, that the proposed Plan was not submitted in "good faith," fails to meet the "best interest" test and is not feasible. BNY submits that the "good faith" requirement of 11 U.S.C. § 1129(a)(3) is not met because the Debtor has "artificially impaired" the claim of Union State. Although this Court does not quarrel with the cases that have analyzed the issue of artificial impairment in the context of 11 U.S.C. § 1129(a)(3), the Court prefers to consider the issue in the context of an analysis of § 1129(a)(10). Accordingly, this Court will defer the artificial impairment issue to the next section of this decision and find that the record establishes that the Plan is otherwise submitted in "good faith." *See In re Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).

■ This Court also finds that the Plan satisfies the "best interest" test of 11 U.S.C. § 1129(a)(7). "To apply this test, courts must consider the value of the debtor's assets in excess of valid liens and exemptions, and determine (using the payment priorities set out in Chapter 7 of the Bankruptcy Code) that each non-accepting claimant or interest holder will receive at least as much under the plan as it would if the debtor's assets were liquidated under Chapter 7 at the date of confirmation." *In re Best Products Co., Inc.*, 168 B.R. 35, 71 (Bankr.S.D.N.Y.1994), *appeal dismissed as moot by* 177 B.R. 791 (S.D.N.Y. 1995), *aff'd on other grounds*, 68 F.3d 26 (2d Cir.1995) (*citing In re Montgomery Court Apartments of Ingham County, Ltd.*, 141 B.R. 324, 330 (Bankr.S.D.Ohio 1992)). Under the circumstances, this Court finds the "best interest" test is met with respect to the two classes which voted against the Plan. Class 2 is receiving a 100% dividend plus compensating interest, albeit over time, whereas it is questionable whether BNY would receive full payment on its secured claim in a forced liquidation. In addition, the Plan proposes to pay Class 4 a five percent dividend and the liquidation analysis indicates that this class would receive no distribution in the context of a liquidation. Thus, the proposed Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

■ Similarly, the Court concludes that the proposed Plan is feasible. Pursuant to 11 U.S.C. § 1129(a)(11), a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor of the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11); *In re Cellular Information Systems, Inc.*, 171 B.R. 926, 945 (Bankr.S.D.N.Y.1994) ("the plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed") (*citing In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 762 (Bankr.S.D.N.Y.1992)). Based upon the testimony proffered at the confirmation hearing and information contained in the Debtor's financial projections, The Court is satisfied that the proposed Plan, if it were confirmable, would not be followed by liquidation or the need for further financial reorganization.

C. *Disqualification of the Class 3 Vote*

■ BNY seeks to invalidate the affirmative vote of Class 3 in the hopes of rendering this Plan unconfirmable as a matter of law. As stated above, there must be at least one impaired class (in this case, Class 3), which

760

has voted in favor of the Plan before the court can consider the merits of a cram down under 11 U.S.C. § 1129(b). BNY alleges that the Class 3 claim of Union State was "artificially impaired" in that the Plan could have provided for full payment of the Class 3 claim but did not do so in order to manufacture the impaired accepting class required by 11 U.S.C. § 1129(a)(10). *See* Memo of Law in Opp. to Conf. of Plan of Reorg. at 4. Because the treatment afforded the Class 3 claim is tactically motivated and not substantively necessary, BNY argues that the claim of Union State should be deemed unimpaired, thereby stripping the Plan of the only vote in favor of the Plan.

As evidence of this improper scheme, BNY points to a prior version of this plan of reorganization which proposed to treat Union State in a manner that would render it unimpaired. BNY also points out that the difference in payment that Union State is to receive under the proposed Plan from what it otherwise would receive from this debtor is *de minimis*, amounting to at most one year's interest. These facts, BNY argues, along with the fact that the obligation to Union State was guaranteed by Mrs. Varriale, suggests that Union State voted in favor of the Plan with the expectation that it would get paid in full.

■ A class of claims or interests is impaired under a plan, unless, with respect to each claim or interest of such class, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). The Debtor bears the burden of proving compliance with each of the requirements of 11 U.S.C. § 1129(a), *In re Guilford Telecasters, Inc.*, 128 B.R. 622, 625 (Bankr.M.D.N.C.1991), including the requirement that there be an impaired class that has voted in favor of the plan.

■ The policy underlying the 11 U.S.C. § 1129(a)(10) is plain. This provision ensures that prior to "embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation," there is a showing that some group hurt by the plan favors the plan. *In re 500 Fifth Ave. Assoc.*, 148 B.R. at 1020 (*citing In re 266 Washington Associates*, 141 B.R. at 287 (11 U.S.C. § 1129(a)(10) acts as a "statutory gatekeeper barring access to cram down where there is absent even one impaired class accepting the plan")). Stated differently, 11 U.S.C. § 1129(a)(10) serves as a Congressional reminder that, notwithstanding the social benefits that are derived from rehabilitating troubled businesses, plans of reorganization should not be confirmed solely because the debtor will not otherwise survive. There must be a manifestation of creditor support for the proposed plan before a court should even consider the merits of the proposed plan. Allowing an "artificially impaired" class to satisfy the 11 U.S.C. § 1129(a)(10) requirement would nullify the protection it was designed to provide and would promote "side dealing" between debtor and selected creditors. *In re Windsor on the River Associates, Ltd.*, 7 F.3d 127, 132 (8th Cir.1993); *In re Lettick Typografic, Inc.*, 103 B.R. 32, 39 (Bankr.D.Conn.1989) (citation omitted). There must be a showing that the proposed impairment is necessary for economical or other justifiable reasons and not just to achieve a "cram down."

Here, the Court finds that the Debtor has failed to meet its burden of proving that the Union State claim was impaired for justifiable business reasons. The amount of Union State's claim, $2,370, is indeed modest in light of the claims of the other creditors. *See In re W.C. Peeler Co., Inc.*, 182 B.R. 435, 437 (Bankr.D.S.C.1995) (claimant, owed less than $2,000, was not a "truly impaired creditor"). Moreover, the existence of the guaranty strongly suggests that Union State is going to be paid in full, one way or another. Most importantly, however, the Court was not convinced by any of the evidence adduced at the confirmation hearing that the Debtor has proposed this treatment for any other reason but to obtain the requisite vote to permit a cram down. Indeed, the Debtors' representation that it could pay the approximately $12,000 IRS claim if called upon to do so is fatal to its argument that a valid business reason motivated the proposed treatment of Union State's $2,370 claim.

In sum, the Court finds that the Class 3 claim was "artificially impaired" and must be disqualified. Accordingly, the Plan has failed to garner the necessary affirmative vote of one impaired accepting class and cannot be confirmed.

### D. *Alternatively, the Plan Fails to Satisfy 11 U.S.C. § 1129(b)*

 Even were this Court to assume, arguendo, that the Debtor's Plan did have the support of one impaired accepting class, this Court would still deny confirmation of the Plan on the basis that the Plan is not "fair and equitable" within the meaning of 11 U.S.C. § 1129(b)(1). As previously indicated, a plan of reorganization that fails to obtain unanimous approval can nonetheless be confirmed if it has the support of at least one impaired class and it satisfies the elements of 11 U.S.C. § 1129(b). To confirm a plan under this section of the Code, a court must find that the proposed plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class that has voted (or been deemed to vote) against confirmation. 11 U.S.C. § 1129(b)(1). There .has been no contention that the Plan discriminates unfairly with respect to a particular class, accordingly, the only issue is whether the Plan is "fair and equitable" with respect to Classes 2 and 4.

### 1. *"Fair And Equitable" Generally*

What constitutes "fair and equitable" with respect to a particular class of claims or interests is not so readily ascertainable. When the Bankruptcy Code was enacted in 1978, Congress did not define exclusively the term "fair and equitable." *See* 11 U.S.C. § 1129(b)(2) ("condition that a plan be fair and equitable with respect to a class *includes* the following requirements:") (emphasis supplied). Rather, Congress codified in 11 U.S.C. § 1129(b) several enumerated requirements of when the "fair and equitable" standard is met. *Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner*

*Mall Partnership*), 2 F.3d 899, 906 (9th Cir. 1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994), *dismissed as moot,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (emphasis omitted). These requirements vary depending upon whether the "cram down" is sought against classes of secured claims, unsecured claims or interest holders. 11 U.S.C. § 1129(b)(2)(A), (B), (C); *In re Montgomery Court*, 141 B.R. at 336.

### 2. *The Plan is "Fair And Equitable" to Class 2*

 Under 11 U.S.C. § 1129(b), a plan is "fair and equitable" with respect to a secured claim if it provides either 1) that the secured creditor retains a lien securing such claim and receives "deferred cash payments" totaling the allowed amount of such claim, or 2) that the property is sold with the secured creditors liens attaching to the proceeds of the sale, or 3) that the secured creditor receives the "indubitable equivalent" of its claim. 11 U.S.C. § 1129(b)(2)(A). Pursuant to Article 6 of the Plan, BNY will retain its lien on all inventory, until sold, and have a replacement lien on new inventory. In addition, the Plan provides that BNY will receive 40 equal quarterly installments of $8,964, in satisfaction of BNY's secured claim. BNY has not challenged the confirmation of the Plan on the ground that the present value of this proposed payment stream is less than its allowed claim.[5] Accordingly, the proposed treatment of Class 2 complies with 11 U.S.C. § 1129(b)(2)(A)(i) and is "fair and equitable."

### 3. *The Plan is Not "Fair And Equitable" to Class 4*

 To be "fair and equitable" with respect to a class of unsecured claims, the plan must provide either 1) that each claimant receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, or 2) that each holder of any claim or

---

**5.** BNY has, however, suggested that were this Plan confirmed, the Debtor would undertake a program of purchasing its goods on consignment in order to defeat BNY's security interest. *See* Memo of Law in Opp. to Conf. of Plan of Reorg.

at 28. I need not reach this issue in the context of this decision since at this juncture it is mere speculation and, more importantly, not outcome determinative.

interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. 11 U.S.C. § 1129(b)(2)(B). "In plainer English (this) provision bars old equity from receiving any property via a reorganization plan 'on account of' its prior equitable ownership when all senior claim classes are not paid in full." *Bonner Mall,* 2 F.3d at 908 (emphasis omitted); *see Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),* 961 F.2d 496, 503 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992) (recognizing that this prohibition, also known as the "absolute priority rule," is codified in 11 U.S.C. § 1129(b)(2)(B)(ii)).

The Plan proposes to pay unsecured claimants five (5%) percent of their allowed claims in 20 quarterly installments, without interest. *See* Plan at Article 8. Furthermore, the Plan contemplates that the stock of the reorganized entity will be issued to Mrs. Varriale's sons in exchange for $25,000. The Debtor argues that this proposed treatment does not run afoul of 11 U.S.C. § 1129(b)(2)(B) since the Varriale sons are receiving interest in the reorganized entity not on account of their junior interest but on account of their capital infusion. *See* Debtor's Conf.Hrg.Brf. at 19. At bottom, this contention raises the widely debated issue commonly referred to as the continued viability of the "new value exception" to the absolute priority rule. In a thorough analysis of this very issue, the Ninth Circuit in *Bonner Mall* concluded that where certain conditions are met, former shareholders are deemed to obtain the shares in a reorganized entity on account of their investment of new value and not on account of their junior interest. *See Bonner Mall,* 2 F.3d at 908. Based upon this conclusion, the Ninth Circuit declared that the "new value exception" to the absolute priority rule continues to be a viable yet uncodified element of bankruptcy law. *Id., see Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 121, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939) ("It is, of course, clear that there are circum-

stances under which stockholders may participate in a plan of reorganization of an insolvent debtor"). Bankruptcy courts in the Second Circuit have uniformly acknowledged the continued viability of the "new value exception." *In re Gramercy Twins Associates,* 187 B.R. 112, 126 (Bankr.S.D.N.Y.1995); *In re Woodmere Investors Ltd. Partnership,* 178 B.R. 346, 363 (Bankr.S.D.N.Y.1995); *In re 8315 Fourth Avenue Corp.,* 172 B.R. 725, 737 (Bankr.E.D.N.Y.1994); *In re One Times Square Associates Ltd. Partnership,* 159 B.R. 695, 707 (Bankr.S.D.N.Y.1993), *aff'd,* 165 B.R. 773 (S.D.N.Y.1994), *aff'd,* 41 F.3d 1502 (2d Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1107, 130 L.Ed.2d 1072 (1995) (citations omitted); *In re Lettick Typografic,* 103 B.R. at 35. Although this Court also concludes that the "new value exception" remains an integral component of bankruptcy jurisprudence,[6] this Court is nonetheless compelled to deny confirmation of this Plan based upon its application to the facts of this case.

■ To satisfy the "new value exception," the plan proponent must establish that old equity is buying shares in the reorganized entity in exchange for a contribution that is new, substantial money or money's worth, necessary for a successful reorganization and reasonably equivalent to the value or interest received. *In re Gramercy Twins Associates,* 187 B.R. at 126 (*citing Bonner Mall,* 2 F.3d at 908; *In re One Times Square,* 159 B.R. at 707–708).

In this case, the proposed $25,000 cash contribution to the Debtor constitutes new money, satisfying two of the requirements. However the debtor has failed to satisfy its burden of proving that the proposed contribution is necessary for the implementation of this Plan or substantial in relation to the claims being disposed of under the Plan. *In re Tallahassee Associates,* 132 B.R. 712, 719 (Bankr.W.D.Pa.1991). The record does not support a finding that the $25,000 proposed is substantial given that it represents 2.3% of the unsecured claims in this case. *In re*

---

6. Since the analysis regarding the continued viability of the "new value exception" has been extensively chronicled in *Bonner Mall* as well as the decisions emanating from this Circuit, this

Court will refrain from treading over well-worn ground and adopt the reasoning employed in these decisions.

*Snyder,* 967 F.2d 1126, 1131 (7th Cir.1992) (2.7% is not substantial); *In re Sovereign Group 1985–27, Ltd.,* 142 B.R. 702, 710 (Bankr.E.D.Pa.1992) (3.6% is not substantial). Moreover, the record does not support a finding that this Debtor had approached (and been rebuffed by) other entities to obtain financing elsewhere, and that as a consequence, the Varriale sons are the only source of commercially reasonable financing available to this Debtor. *In re Orfa Corp. of Philadelphia,* 1991 WL 225985, *7 (Bankr. E.D.Pa.1991); *In re Marston Enterprises, Inc.,* 13 B.R. 514, 517 (Bankr.E.D.N.Y.1981). In short, the Varriale sons are not the lenders of last resort but rather the lenders of first opportunity. Such self-dealing cannot be countenanced. *See In re Bryson Properties, XVIII,* 961 F.2d at 505. That said, this Court need not discuss the issue of whether the proposed contribution is reasonably equivalent to the value of the proposed interest to be received in the reorganized entity, although there too the Debtor has failed to establish a supportive record. *See In re Future Energy Corp.,* 83 B.R. 470, 499–502 (Bankr.S.D.Ohio 1988). *See also In re Hickey Properties,* 1995 WL 264023, *3 (Bankr. D.Vt.1995) (suggesting that equity shares should be auctioned to determine true value); *In re Bjolmes Realty Trust,* 134 B.R. 1000, 1010 (Bankr.D.Mass.1991) (same).

## CONCLUSION

For the foregoing reasons, the Debtor's request to confirm this plan of reorganization is denied. BNY's motion to lift the automatic stay is granted. BNY is directed to settle an order consistent with this decision.