**TROY SAVINGS BANK, Appellant,**

v.

**TRAVELERS MOTOR INN, INC.; Travelers Motor Inn–Syracuse Inc.; and Travelers Motor Inn–Plattsburgh, Inc., Debtors–Appellees.**

**No. 95–CV–84 (FJS).**

United States District Court,
N.D. New York.

Dec. 1, 1997.

486

Hogson, Russ, Andrews, Woods & Goodyear, L.L.P., Albany, NY (Gerald H. Katzman, of counsel), for Appellant.

Cooper, Erving, Savage, Nolan & Heller L.L.P., Albany, NY (Richard H. Weiner, Justin A. Heller, of counsel), for Debtor–Appellees.

## MEMORANDUM-DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Appellant, Troy Savings Bank, appeals the Order of Confirmation issued by Bankruptcy Judge Utschig confirming the Chapter 11 reorganization plan of the Debtor–Appellees,

three motels joined in bankruptcy.[1] The Appellant raises eight grounds for appeal and requests the Court to vacate the Order of Confirmation due to multiple errors of law by the bankruptcy court.

## Background

The Debtor Corporations filed for voluntary Chapter 11 bankruptcy on July 13, 1993. The principal creditor for all three motels is the Appellant, Troy Savings Bank, which holds mortgages on the three motel properties.

On October 5, 1994, the bankruptcy court held a hearing to determine the appropriate valuation of the three properties. The court heard expert testimony presented by both the Debtors and the Appellant as to the valuation of the properties utilizing the "capitalization of income" approach to valuation. Additionally, the Appellant presented a witness from Motel 6, Inc., who purported to offer $1,850,000 on the spot for the Plattsburgh property. At the close of the hearing, Bankruptcy Judge Schmerber issued an order valuing the properties at $1,308,331 for the Plattsburgh motel, $2,222,063 for the Albany motel, and $2,051,800 for the Syracuse motel.

During the reorganization proceedings, the Debtors and the Appellant proposed competing reorganization plans. The Debtors' plan grouped the unsecured creditors into three classes: (1) the unsecured deficiency claim on each of the three mortgages; (2) unsecured claims over $250; and (3) unsecured claims under $250. The Appellant's competing plan contained only two classes of unsecured claims, those over $250 and those under $250. The creditors rejected the Appellant's plan.

Prior to voting on confirmation of the Debtors' proposed plan, an entity named LS Acquisition Co. purchased many of the unsecured creditor claims. LS Acquisition is owned by a personal friend of Mr. Carnevale, who is the principal owner of the Debtor Corporations. The Debtors' plan was initially rejected due to the Appellant's opposition.

The plan, however, was confirmed utilizing the "cram down" provision of the Bankruptcy Code. At the confirmation hearing, Bankruptcy Judge Thomas S. Utschig ruled on the various objections to confirmation by the Appellant, and confirmed the plan as modified. In the Appellant's closing remarks at the end of the confirmation hearing, the Appellant requested a stay of the confirmation order for two weeks in order to prepare a § 1111(b) election. The Bankruptcy Judge denied this request as untimely.

Thereafter, on May 16, 1995, the Bankruptcy Court issued an Order of Confirmation approving the Debtors' reorganization plan. This appeal followed.

## Discussion

The Appellant raises eight grounds for appeal. Specifically, the Appellant argues that the bankruptcy court erred by: (1) allowing the Debtors' plan to contain three classes of unsecured claims which was devised for the sole purpose of defeating the Appellant's opposition to the plan; (2) ordering confirmation even though the Debtors violated Bankruptcy Rule 3001(e); (3) ordering confirmation when there was no valid impaired class accepting the "cram down;" (4) not requiring the Debtor to pay accumulated motel revenues to the Appellant upon confirmation as a value equivalent to the Appellant's perfected security interest in "rents and profits;" (5) not permitting the Appellant to make a § 1111(b) election; (6) ordering confirmation even though the Debtors violated Local Bankruptcy Rule 320(e); (7) valuing the Plattsburgh motel property too low; and (8) confirming a plan that violated the absolute priority rule.

The standard of review for bankruptcy appeals is set forth in Bankruptcy Rule 8013, which provides, inter alia, that findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R.Bankr.P. 8013. A finding is only clearly erroneous when "although there is evidence to support it, the reviewing court on the

---

1. The Travelers Motor Inn, Inc. in Albany, the Travelers Motor Inn–Plattsburgh, Inc., and the Travelers Motor Inn–Syracuse, Inc., are separate corporate entities with a single common shareholder, Anthony Carnevale.

entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). Additionally, a bankruptcy court's legal conclusions are subject to a de novo review by the reviewing court. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992). Pursuant to this standard of review, the Court will review each of the Appellant's specific grounds for appeal seriatim.

## I. IMPROPER CLASSIFICATION OF CLAIMS

Appellant argues that the bankruptcy court erred by approving the Debtors' classification scheme for unsecured creditors in their reorganization plan. The plan, as confirmed, had three classes of unsecured creditors: (1) Appellant's unsecured deficiency claims as to each of the motels; (2) general unsecured creditors with claims over $250; and (3) general unsecured creditors with claims under $250. The Appellant argues that all unsecured creditors should have been classified as one class. If they had, the Appellant argues that the Debtors would not have been able to effect the "cram down" of their reorganization plan on the Appellant pursuant to 11 U.S.C. § 1129(b) (providing that a plan may be confirmed over the objection of a class of creditors as long as one impaired class votes to accept the plan). Appellant argues that the unsecured classes in the Debtors' reorganization plan were "gerrymandered" to defeat its opposition to the plan. Appellant further argues that Second Circuit precedent provides that a mortgagee's unsecured deficiency claim cannot be put into a separate class so that other unsecured creditors can approve a "cram down." *See In re Boston Post Road Ltd. Partnership,* 21 F.3d 477 (2d Cir.1994). Additionally, the Appellant argues that the Debtor provided no credible reason for the separate classification scheme as it existed in their reorganization scheme. As such, the Appellant concludes that the bankruptcy court's confirmation of such a reorganization plan was in error.

Appellees argue that the Appellant's argument contesting the unsecured creditor classification scheme is barred by judicial estoppel. Appellees contend that the Appellant's own proposed plan, which was rejected by the creditors in favor of the Debtors' plan, proposed a two-tiered classification scheme for unsecured claims—those over $250 and those under $250. Since, in the case of each hotel, "cram down" was accepted by the "under $250" class, "cram down" would have been effected *even under the Appellant's plan.* Appellees argue that the Appellant should be judicially estopped from asserting on appeal that there should have been only one class of unsecured claims, simply because it is more advantageous to the Appellant at this time. *See In re Galerie Des Monnaies of Geneva, Ltd.,* 62 B.R. 224, 225 (S.D.N.Y. 1986). In any event, Appellees argue that the creation of the "under $250" class was validly based on administrative convenience; specifically, so that the under $250 class were able to receive their percentage immediately upon confirmation, rather than making tiny payments over a period of years like the bigger unsecured claims. *See* 11 U.S.C. § 1122(b).

The classification of claims is governed generally by § 1122 of the Bankruptcy Code. Section 1122(b) provides:

A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the Court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122(b) (1993). The Second Circuit has addressed the permissibility of separate classification of similar types of claims in *In re Boston Post Road, Ltd., Partnership,* 21 F.3d 477 (2d Cir.1994). In *Boston Post Road,* the Second Circuit affirmed a Connecticut Bankruptcy Court's denial of confirmation of a debtor's Chapter 11 plan. *See id.* at 478–79. The court found that the Bankruptcy Code did not permit separate classification of unsecured claims solely to create an impaired assenting class to effect "cram down." *See id.* at 483. Further, the court found no evidence of a legitimate business reason for the separate classification of similarly situated unsecured creditors. *See id.* Thus, the court found that the bankruptcy court properly concluded that the debtor's

creation of multiple classes of similar unsecured claims was done with the sole purpose of "gerrymandering" the classes in order to force "cram down" on an objecting unsecured creditor. *See id.* at 481–83.

■ There is no indication in the record that the bankruptcy judge applied the incorrect legal standard in determining that the Debtor's classification scheme was valid. Thus, the Court must review the bankruptcy court's application of the facts for clear error. The bankruptcy court found in the confirmation hearing that there was a reasonable business justification for segregating the Appellant's unsecured claim into a separate class because it found that the creditors with small unsecured claims held different interests and expectations than the Appellant. (*See* Conf. Hearing Tr. at 36.) Furthermore, the distinction between the unsecured claims over $250 and those under $250 is demonstrated in their respective treatment in the approved reorganization plan. The "over $250" claims receive quarterly payments for a period of five years at ten percent, while the "under $250" claims receive a lump sum upon confirmation at thirty five percent.

Furthermore, even if the Court does not apply judicial estoppel, the Appellant's present position on this particular issue smacks of post hoc rationalization. Appellant's own proposed plan contained two classes of unsecured creditors, with $250 dollars being the line of demarcation. If both the Appellant and the Appellees proposed this grouping, it was reasonable for the bankruptcy court to find that it related to legitimate administrative concerns. Even if the Appellees' proposed plan had been changed to reflect only two classes of unsecured creditors as was originally advocated by the Appellant's plan, "cram down" still would have been effected because it was the "under $250" class who accepted the debtor's plan as to all three of the motels. In light of Appellant's previous position, its assertion now that the only reasonable classification scheme would contain only one class of unsecured creditors is self serving. Therefore, the Court holds that the Bankruptcy Court's approval of the classification of unsecured claims in the approved reorganization plan was not clearly erroneous.

## II. LS ACQUISITION'S PURCHASE OF UNSECURED CLAIMS

On a related issue, the Appellant argues that the Bankruptcy Court erred by allowing LS Acquisition ("LSA") to vote claims which it purchased from unsecured creditors of the Plattsburgh motel because LSA did not comply with Bankruptcy Rule 3001(e) which requires the filing of proof of transfer of unsecured claims prior to confirmation. Thus, Appellant argues that the bankruptcy court should not have allowed confirmation of the Plattsburgh plan.

The Appellees argue that the bankruptcy judge did not err by permitting LSA to vote its claims because the bankruptcy court properly found that LSA had purchased the claims in good faith. The Appellees argue that even though Mr. Serras, the principal of LSA, was a friend of Mr. Carnevale and freely admits that he wanted to help Mr. Carnevale stay in business, the bankruptcy court properly relied on evidence in the record indicating LSA had a legitimate business interest in acquiring the unsecured claims. *See, e.g., First Humanics Corp.*, 124 B.R. 87 (Bankr.W.D.Mo.1991); *In re Gilbert*, 104 B.R. 206 (Bankr.W.D.Mo.1989).

■ Bankruptcy Rule 3001(e)(2) states: If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

Fed. R. Bankr.P. 3001(e)(2) (1991). At the confirmation hearing, the Appellant requested an additional twenty day objection period under Rule 3001(e)(2). The bankruptcy judge correctly informed the Appellant that (e)(2) only permits the *transferor* to object to the transfer. Likewise, only the transferor is entitled to a notice and hearing under (e)(2). Thus, the bankruptcy judge correctly held that the Appellant's request for an additional twenty day period was unjustified. Of course, the Appellant, as a party in interest, has standing to object to a procedural violation of Rule 3001, but disallowal of the transfer may only be permitted where the party in interest is prejudiced. *See In re Crosscreek Apartments, Ltd.,* 211 B.R. 641, 645 n. 6 (Bankr.E.D.Tenn.1997) (citing *Official Unsecured Creditors' Comm. v. Stern,* 984 F.2d 1305, 1313 (1st Cir.1993)).

▮ In the present case, the bankruptcy court found that even if there was a procedural violation of Rule 3001(e)(2) by LSA, there was no prejudice to the Appellant because LSA's purchase of the claims was made in good faith. The Appellant argues that had it had notice of LSA's purchase of claims earlier it could have bid for the claims. The Court finds this argument unpersuasive in light of the purpose of Rule 3001(e)(2), which is not to give unrelated third parties notice of the transfer, but to give the *transferor* notice of the filing of claim by the transferee. *See id.* at 645 n. 7. Furthermore, if the Appellant wished to purchase unsecured claims in the Plattsburgh bankruptcy it was free to do so at will.

The only credible prejudice the Appellant could claim in this case is that the claims purchased by LSA were done so in bad faith with an illegitimate motive. However, the bankruptcy court found that there was no evidence of bad faith and concluded that LSA had a legitimate business reason for the purchase of the claims based, in part, upon Mr. Serras' testimony. (*see* Hearing Tr. at 35.) Appellant has pointed to nothing in the record which would indicate that the bankruptcy judge's reasoned judgment on the credibility of this witness yielded a clearly erroneous result.

## III. NO VALID IMPAIRED CLASS VOTING IN FAVOR OF "CRAM DOWN"

Appellant argues that if the Court accepts its argument that the Bankruptcy Court erred by not grouping all the unsecured claims in one class, then the Court must find that the properly grouped class would not have been an accepting class in any of the three motel's bankruptcies, and there could be no "cram down." The Court's decision in the preceding two sections obviates this argument.

## IV. CASH COLLATERAL

Appellant argues that under New York Law, hotel revenues can be considered "rents and profits" for the purpose of constituting cash collateral. The Appellant argues that because it held a perfected security interest in rents and profits from the Appellees, the accumulation of post-petition revenues should have been considered cash collateral which in turn should have been paid in full to the Appellants upon confirmation as a value equivalent for the Appellants's perfected security interest in rents and profits. Thus, the Appellant argues that the bankruptcy court erred by not providing for the payment of all post-petition revenues of the three motels to the Appellant at confirmation.

Appellees object to the Appellant's raising this issue for the first time on appeal. Furthermore, they argue that prior to the 1994 amendments to the Bankruptcy Code, the majority of the courts considering this issue have held that hotel revenues are not rents or profits of real property. *See In re Lakeview Motor Inn, Inc.,* 167 B.R. 326 (Bankr. D.R.I.1994); *In re Kearney Hotel Partners,* 92 B.R. 95 (Bankr.S.D.N.Y.1988).

▮ The Court need not reach this issue. There are sound policy reasons for the established rule that objections to confirmation may not be raised for the first time on appeal. *See Wade v. Bradford,* 39 F.3d 1126, 1130 (10th Cir.1994); *In re Weber,* 25 F.3d 413, 416 (7th Cir.1994); *In re Hanna,* 912 F.2d 945, 948 (8th Cir.1990). The bankruptcy courts are the appropriate forum to resolve objections to confirmation, lest the bankruptcy courts become mere way stations

en route to the appellate court. *See Weber,* 25 F.3d at 416. Thus, the Court finds that the Appellant's objection to motel revenues not being counted as rents and profits was waived by the Appellant's failure to raise it to the bankruptcy court. *See id.*

## V. SECTION 1111(b) ELECTION

The Appellant argues that it should have been able to make a § 1111(b) election to waive its unsecured claim and be paid the present value of its secured claim. *See* 11 U.S.C. § 1111(b) (1997). Appellant argues that even though such an election must be made at the conclusion of the disclosure statement hearing, the Appellant ought to have been granted additional time to make a § 1111(b) election because the plan payout schedule was modified from ten years to five years at the subsequent confirmation hearing. Thus, the Appellant argues that the bankruptcy court erred by not permitting it to make a § 1111(b) election at the close of the confirmation hearing.

Appellees argue that the Appellant's request was correctly denied as untimely. Appellees point to Bankruptcy Rule 3014 which specifies that:

An election of application of § 1111(b)(2) of the Code by a class of secured creditors in a Chapter 9 or 11 case may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix. The election shall be in writing and signed unless made at the hearing on the disclosure statement. The election, if made by the majorities required by § 1111(b)(1)(A)(i), shall be binding on all members of the class with respect to the plan.

Fed R. Bankr.P. 3014 (1997). The Appellees argue that the Appellant did not make an election at the disclosure hearing, nor did the court fix a later suspense for making an election. Further, the Appellees argue that the Appellant did not make its request for an election until closing arguments at the second confirmation hearing. The Appellees point to the Appellant's acquiescence to the change in the terms of payment during the confirmation hearing, as making it unlikely

that that change necessitated the Appellant's last minute election.

█ Rule 3014 clearly specifies that a § 1111(b) election must be made prior to the conclusion of the disclosure hearing. The Appellant did not request such an election nor did the court fix a later time to make an election. Thus, the bankruptcy court did not make an error of law by refusing the Appellant's last minute request for an extension to make an election. Furthermore, while the bankruptcy court did change the term of payment in the August 11, 1995 confirmation hearing, the Appellant did not request an extension until two days later, at the close of the April 13, 1995 hearing. Additionally, it appears from the record of the August 11 hearing that the Appellant had no objection to the change in the term of payment. Thus, based on this record, the Court cannot find that the Bankruptcy Court abused its discretion by not allowing the Appellant to make an untimely § 1111(b) election.

## VI. FAILURE TO FOLLOW THE LOCAL RULES

The Appellant argues that the bankruptcy court erred by allowing confirmation when the Appellees failed to comply with the requirements of Local Bankruptcy Rule 320(c). Rule 320(c) requires a plan seeking confirmation by "cram down" to file and serve a notice of intent at least seven days in advance of the confirmation hearing. Appellant argues that this requirement was not met.

The Appellees contend that the disclosure statement provided ample notice to Appellant of the Appellees' intent to seek confirmation by "cram down." Additionally, the Appellees object to the Appellant raising this issue for the first time on appeal.

For the reasons previously stated, the Court declines to review an objection to confirmation that was not first raised with the bankruptcy court.

## VII. VALUATION

The Appellant argues that the bankruptcy court erred by undervaluing the Plattsburgh

Hotel of the Debtor.[2] The Appellant argues it presented evidence at the valuation hearing of a bona fide offer of $1,850,00 for the Plattsburgh motel, which the court should have considered the best evidence of the actual value of the property. Thus, the Appellant argues that the bankruptcy court's decision to value the Plattsburgh motel at $1,308,331 was clear error.

The Appellees contend that prior to the valuation hearing the parties agreed to a valuation method based on the "capitalization of income" approach. Further, they argue that the court held a full day hearing and considered the expert testimony from the experts of both the Appellant and the Appellees. The Appellees also note that the bankruptcy court discounted the testimony of Michael Francis, the Motel 6 employee who purported to make an offer for the motel while on the stand, because the court found that the offer was based on faulty assumptions. (Doc # 119, pp. 34.)

 The Court finds that the "clear error" standard is appropriate for the review of this issue. The Court also finds that there was ample evidence presented at the valuation hearing to support the bankruptcy court's valuation estimate. Certainly, a bona fide offer is persuasive evidence of value, if it is based on accurate background information. However, this Court is not entitled to set aside a factual finding because it finds the bankruptcy court *could have* reached a different factual conclusion. *See In re Botany Industries, Inc.,* 463 F.Supp. 793, 795 (E.D.Pa.1978), *aff'd,* 609 F.2d 500 (3d Cir. 1979). Appellant's arguments amount to a criticism of the bankruptcy judge's assessment of credibility. Accordingly, the Court finds no basis to set aside the value determination made by the bankruptcy court.

## VIII. ABSOLUTE PRIORITY RULE

Finally, Appellant argues that the bankruptcy court erred by confirming a plan which violated the "absolute priority" rule. Specifically, Appellant argues that although

the "absolute priority rule" is excepted if "new value" is added by the owner of the debtor corporation, the "new value" found by the bankruptcy court in this case was the $50,000 added by Mr. DiBianco, a third party and friend of the debtor. Appellant argues that such an amount can not be sufficient to constitute new value in light of Appellant's offer at confirmation to purchase the same interest for $100,000. Alternatively, the Appellant argues that the transfer of stock to Mr. DiBianco should be considered by the Court to be a "sale" under 11 U.S.C. § 363. The Appellant contends that the bankruptcy court violated § 363 because the notice and hearing provisions of § 363 were not followed and the court did not accept the higher offer made by the Appellant for the very same interest.

The Appellees argue that the absolute priority rule is not at issue because the reorganization plan did not provide for the Debtors to retain any equity ownership interest in the reformed corporation following confirmation. The Appellees further argue that the confirmed plan provides for the issuance of stock in the reorganized corporation to Mr. DiBianco for fair consideration. The Appellees contend that the issuance of stock in the reorganized corporation is not a sale under § 363, but rather is properly considered part of the reorganization plan under 11 U.S.C. § 1123(a)(5), thereby making the Appellant's offer at confirmation irrelevant. Appellees argues that the fairness of this provision is guaranteed through all the safeguards inherent in the disclosure approval and voting process which ensure the best interests of all the creditors.

 The "absolute priority" requirement of 11 U.S.C. § 1129(b)(2)(B) sets forth the statutory standard for determining whether a "cram down" is "fair and equitable" with respect to the class of unsecured claims that has not accepted the reorganization plan. It states that:

> With respect to a class of unsecured claims—(i) the plan provides that each

---

2. Additionally, the Appellant challenges the valuation of all three motels based on its previous argument that motel revenues should have been considered cash collateral which should have in turn affected the valuation of all three of the motels. As this contention was never raised at the valuation hearing, the Court declines to address it.

holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

See 11 U.S.C. § 1129(b)(2)(B). More simply, the "absolute priority" rule bars junior classes of claims from receiving any property when all senior classes of claims are not paid in full. See In re Fur Creations by Varriale, Ltd., 188 B.R. 754, 762 (Bankr.S.D.N.Y.1995). Thus, a debtor ordinarily cannot retain an equity ownership in stock in a reorganized corporation absent 100% payment of the unsecured claims. See In re Woodscape Ltd. Partnership, 134 B.R. 165, 169 (Bankr.Md. 1991).

■ The "new value" rule is a common law exception to the absolute priority provision which is recognized when a previous stockholder buys shares in the new reorganized entity in "exchange for a contribution that is new, substantial money or money's worth, necessary for a successful reorganization and reasonably equivalent to the value or interest received." In re Fur Creations, 188 B.R. at 762 (citing In re Gramercy Twins Assoc., 187 B.R. 112, 126 (Bankr. S.D.N.Y.1995)).

■ As to the transfer of new shares to third parties, the reorganization plan may specify an individual to whom the shares are sold. See 11 U.S.C. § 1123(a)(5)(D); Woodscape, 134 B.R. at 174. Such a sale is not governed by the absolute priority rule because third parties are not creditors to the pre-Chapter 11 debtor. Further, "there is no prohibition against a private sale or against a sale to insiders, and there is no requirement that the sale be by public auction." Woodscape, 134 B.R. at 174. In such a situation, the interests of the creditors are protected not by the absolute priority rule, but by the applicable provisions of §§ 1129(a) and (b)(2)(A). See id. (finding that the creditors interests in such situations are protected by the right to receive a present value of not less than that of a Chapter 7 liquidation, the right of secured creditors to adequate protection of their collateral, and the secured creditor's right under a plan to receive the present value of their secured claims).

■ In the present case, the confirmed reorganization plan provided for the sale of all the shares of the reorganized Debtors to a third party corporation owned by the friend of the owner of the Debtor corporations, a Mr. DiBianco. Such a transfer does not implicate the absolute priority rule set forth in 11 U.S.C. § 1129(b)(2)(B) because the Debtors are not retaining any equity ownership of stock in the reorganized corporation. Thus, by definition, § 1129(b)(2)(B) is not implicated. Even if § 1129(b)(2)(B) did apply, the bankruptcy court found that the $50,000 was new value and reasonably equivalent to the interest at issue.

■ As to the Appellant's alternate argument, § 363 governs the use, sale, or lease of estate property by the trustee pursuant to a Chapter 7 or 11 reorganization. Here, the transaction at issue is not a sale by the trustee, but is a specific provision in the Debtors' confirmed reorganization plan. Such a transaction is specifically authorized by 11 U.S.C. § 1123(a)(5)(J), which states: "notwithstanding any otherwise applicable nonbankruptcy law, a plan shall ... provide adequate means for the plan's implementation, such as ... issuance of securities of the debtor, or of any entity ... for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose ...." Thus, the interests of creditors such as the Appellant in opposing such a transaction are protected by the confirmation proceedings and the applicable sub-sections of 11 U.S.C. § 1129. See Woodscape, 134 B.R. at 174. Such protections were afforded to the Appellant by the bankruptcy court and properly ruled on during the confirmation hearings. Appellant's offer at confirmation of $100,000 for the same issuance of stock is irrelevant in that the issuance of stock was a proposed part of the Debtors' reorganization plan, not a court monitored auction of that interest. The Appellant proposed its own plan for reorganization which was rejected by the creditors.

Thus, to the extent that the bankruptcy court found that the issuance of stock to a third party corporation for $50,000 was fair and reasonable at the confirmation hearing, the court did not violate the absolute priority rule, nor did it err by disregarding the Appellant's competing offer of $100,000 for the same interest.

### Conclusion

After carefully considering the Appellant's appeal, the entire record on appeal, and the applicable law, the Court finds that the bankruptcy court below used the correct legal standards in confirming the Debtors' Chapter 11 reorganization plan and did not clearly err in its findings of fact. Therefore it is hereby

ORDERED that the decision of the bankruptcy court's Order of Confirmation is AFFIRMED and the Appellant's appeal is DISMISSED.

**IT IS SO ORDERED.**