**In re John E. DALY, Debtor.**

**Bankruptcy No. 93–18189–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

June 10, 1994.

Thomas E. Pontes, Raynham, MA, for NBIS.

Neal E. Satran, Boston, MA, for debtor.

*MEMORANDUM OF DECISION ON RENEWED MOTION OF NEW BEDFORD INSTITUTION FOR SAVINGS FOR RELIEF FROM THE AUTOMATIC STAY*

CAROL J. KENNER, Bankruptcy Judge.

█ By its Renewed Motion for Relief from the Automatic Stay, New Bedford Institution for Savings ("the Bank") seeks relief from the automatic stay, 11 U.S.C. § 362(a), to foreclose on the real property belonging to the Debtor, John E. Daly, and located at 233 Jefferson Street, North Attleboro, Massachusetts. The Bank seeks relief from the stay pursuant to 11 U.S.C. § 362(d)(2).[1] Under that subsection, the Bank is entitled to relief if the Debtor lacks equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). The Bank holds a mortgage on the subject property to secure a debt owed by the Debtor to the Bank totalling over $200,000 in excess of the combined value of the properties securing the debt. Thus the Debtor does not dispute that he lacks equity in the property. Moreover, it is clear that the property is necessary for the reorganization that the Debtor contemplates: the property, an 18–unit apartment building, is the Debtor's major asset, and its income is the principal source of funding for his plan of reorganization. The sole issue is whether the contemplated reorganization is likely to be confirmed within a reasonable period of time. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,*

484 U.S. 365, 373–75, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) (*"Timbers"*) (Section 362(d)(2)(B) requires a showing that an effective reorganization "is in prospect," that there is "a reasonable possibility of a successful reorganization within a reasonable time"). The Debtor bears the burden of proof on this issue. 11 U.S.C. § 362(g); *Timbers,* 484 U.S. at 373, 108 S.Ct. at 632.

The Bank argues that no reorganization is possible because the Bank holds the vast majority of the unsecured debt and will vote to reject the plan. Therefore, no plan that the Debtor proposes will be accepted by the class of unsecured creditors. Consequently, the Debtor will be unable to satisfy 11 U.S.C. § 1129(a)(10), which requires, as a condition of confirmation, the acceptance of at least one impaired class.[2]

To this the Debtor at first responded that his plan includes another impaired class. Under his plan, the tax claim held by the Town of North Attleboro is separately classified and impaired, and the Town intends to accept the plan. The Bank in turn argued that the Town's claim, which is a priority tax claim, can not be deemed an impaired claim for purposes of satisfying § 1129(a)(10). After the hearing on this motion, the Court gave the parties time to brief this issue—the permissibility of using an impaired priority tax claim to satisfy § 1129(a)(10)—and indicated that it would decide whether an effective reorganization was in prospect on the basis of its decision on this issue.

█ In his brief on the issue, the Debtor responded by conceding the point: "Research has revealed that the great weight of authority allows this taxing authority to be separately classified, but the Debtor cannot rely on this classification for impairment and cramdown under 11 U.S.C. § 1129(a)(10)."[3] Nonetheless, the Debtor did not give up.

---

1. In the alternative, the Bank also seeks relief from the stay under § 362(d)(1) "for cause," but has not specified the "cause." Thus the Bank has failed to state a basis for relief under § 362(d)(1).

2. Section 1129(a)(10) states:
   (a) The Court shall confirm a plan only if all of the following requirements are met: ...
   (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan,

determined without including any acceptance of the plan by any insider.
11 U.S.C. § 1129(a)(10).

3. The Court agrees with this assessment of the law. See, for example, *Travelers Insurance Company v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),* 961 F.2d 496, 501 n. 8 (4th Cir.1992) ("We agree that priority tax claimants, which receive preferential treatment under the Code (*see* 11 U.S.C. § 1129(a)(9)(C)), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cramdown").

Rather, he stated that he had filed an amended plan, under which the secured claim of William Rattey was impaired, and that Rattey intended to accept the plan.[4] Under the Debtor's earlier plan (filed March 17, 1994), Rattey's claim was quantified at "$130,000 (including taxes)" and was not impaired; and Rattey was to continue receiving payments of principal and interest as called for in the note under which the Debtor was indebted to Rattey. Under the amended plan, the Debtor's obligation to Rattey is quantified at $108,900 (with no mention of taxes). As under the earlier plan, the amended plan provides that Rattey will continue to receive monthly payments as called for in the note. However, the amended plan states that payment of the Debtor's prepetition arrearage under the note, quantified at $7,194.54, will be deferred until the note matures on March 31, 2003. (Neither the previous plan nor the disclosure statement submitted with it mentioned an arrearage on the Rattey note.) The Debtor contends that because payment of the arrearage is deferred, Rattey's claim is impaired, and Rattey's expected acceptance of the amended plan will satisfy § 1129(a)(10).

■ The Bank argues that the Debtor's reliance on the new treatment of the Rattey claim is improper for three reasons. First, the Court did not permit the introduction of this new evidence—the new plan, including the new treatment of Rattey's claim—only the submission of legal argument as to the permissibility of using an impaired priority tax claim to satisfy § 1129(a)(10). Where the Debtor has conceded that issue, the Bank's motion should be allowed. Second, the impaired treatment of the Rattey claim was contrived to create an accepting impaired class. Citing *In re Lettick Typografic, Inc.*, 103 B.R. 32, 38 (Bankr.D.Conn.1989), the Bank argues that a class that is technically impaired through manipulation by the Debtor cannot be deemed an impaired class for purposes of § 1129(a)(10). And third, the Debtor's creation of a new impaired class at this late date was done solely to cram down the Bank—that is, to obtain confirmation of the plan over the Bank's objection—and therefore was done in bad faith, which ren-

ders the plan unconfirmable under § 1129(a)(3), the requirement that the plan be proposed in good faith.

■ The Court agrees with each of the Bank's three arguments. First, the Debtor has not requested and the Court has not granted him leave to submit further evidence; nor has the Debtor set forth cause to justify the admission of further evidence. On a motion for relief from the automatic stay, the Court is not free to continue the evidentiary hearing and to postpone a decision on the motion. The Court must honor the movant's right to disposition of the motion within the time limits set forth in 11 U.S.C. § 362(e). The reception of new evidence would require a further evidentiary hearing, which the Court could not schedule in time to satisfy the rule. Moreover, this case is nine months old, and this is the second time the Bank has moved for relief with respect to this property. Under these circumstances, the Debtor was expected at the hearing on this motion to present a refined plan, not a rough draft that would necessitate revisions that would in turn repeatedly delay resolution of this motion. For these reasons, the new evidence must be excluded.

■ Second, even if the new evidence were admitted, it would be to no avail because the impairment of Rattey's claim in the most recent plan was plainly contrived and engineered solely to create an accepting impaired class. In earlier versions of the plan, Rattey's claim was greater than in the present plan but not impaired. The timing of the amendment is telling: the plan was amended to impair Rattey's claim only when it became clear to the Debtor that he could not rely on North Attleboro's priority tax claim to satisfy the requirement of an accepting impaired class. The extent of the impairment is also relevant. The impairment of Rattey's claim, though real, pales in comparison to the impairment of the unsecured claims. Under the most recent plan, Rattey would receive payment in full with interest, but the unsecured creditors would receive payment of at most thirty percent and probably only ten percent of the amounts of their claims.[5]

---

4. The Debtor has submitted no evidence that Rattey would accept the plan.

5. It is impossible to determine from the plan whether it promises the class of unsecured credi-

Thus the impairment of Rattey's claim has no reasonable basis other than the need to create an accepting impaired class. The cases are clear that this is impermissible. A Debtor may not satisfy § 1129(a)(10) by manufacturing an impaired class for the sole purpose of satisfying § 1129(a)(10) and thereby forcing the plan upon a truly impaired class that has voted to reject the plan. *In re Windsor on the River Assocs., Ltd.,* 7 F.3d 127, 130–32 (8th Cir.1993); *In re Willows Convalescent Centers Limited Partnership,* 151 B.R. 220, 222–24 (D.Minn.1991), and cases cited; and *In re Lettick Typografic, Inc.,* 103 B.R. 32, 38 (Bankr.D.Conn.1989). This contrived and artificial impairment can be viewed either as a violation of the requirement of an accepting impaired class, § 1129(a)(10), or as a violation of the requirement that the plan be proposed in good faith, § 1129(a)(3), or as both. Whichever way it is viewed, it prevents confirmation of the plan.

█ Moreover, the Debtor's submission of this most recent plan tends to indicate that the Debtor cannot propose a plan that can be confirmed over the Bank's objection. Where the Bank holds the only impaired claims, the Debtor cannot obtain confirmation without the Bank's acceptance of the plan. The Court concludes that the Debtor has failed to satisfy his burden of proving that the property at issue is necessary to an effective reorganization that is in prospect. The Debtor has not demonstrated that a successful reorganization is in prospect. A separate order will enter allowing the Bank's motion for relief from the automatic stay.

*ORDER ON RENEWED MOTION OF NEW BEDFORD INSTITUTION FOR SAVINGS FOR RELIEF FROM THE AUTOMATIC STAY*

For the reasons set forth in the separate memorandum of decision issued today, the Renewed Motion of New Bedford Institution for Savings for Relief from the Automatic Stay is hereby ALLOWED: New Bedford Institution for Savings is granted relief from the automatic stay, 11 U.S.C. § 362(a), to enforce its mortgage on the real property belonging to the Debtor, John E. Daly, and located at 233 Jefferson Street, North Attleboro, Massachusetts.

tors the fixed sum of $57,900 or a fixed percentage of the amounts of their claims. Nor is it clear what the percentage would be; the plan states that the plan will produce "a 30% dividend to creditors as follows"; but it then outlines four payments of only 2.5 percent each. The disclosure statement that was filed with the plan does not clarify the matter. It states that the fixed sum is only $22,600 and that the promised dividend totals only 10 percent.