In re MEMORIAL PRODUCTS
COMPANY, INC., Debtor.

PONCEBANK, Appellant,

v.

MEMORIAL PRODUCTS COMPANY,
INC., Appellee.

BAP No. PR 96–080.

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 8, 1997.

Rafael Perez–Bachs, with whom Joan Mulet and the firm of McConnell Valdes, Hato Rey, PR, on brief for appellant.

Jose F. Cardona Jiminez, with whom the firm of Rivera Iturba & Cardona Jiminez, Hato Rey, PR, on brief for appellee.

Before VOTOLATO, KENNER, and VAUGHN, Bankruptcy Judges.

PER CURIAM

PonceBank, a secured creditor, appeals from two orders of the bankruptcy court in the chapter 11 case of Memorial Products Company, Inc. (the "debtor"). The first order granted the debtor's motion to vacate the court's earlier order dismissing the case with prejudice; and the second confirmed the debtor's plan of reorganization. PonceBank challenges the vacatur of the order of dismissal as an abuse of discretion, arguing that the debtor had not shown the "excusable neglect" required by F.R.Civ.P. 60(b)(1) (made applicable by F.R.Bankr.P. 9024) as a condition of revisiting the dismissal order. PonceBank also argues that the court erred in confirming the plan of reorganization because the evidence established that the only "impaired" classes of creditors that accepted the plan were classes the Debtor had impaired "artificially"—i.e., without valid cause—and therefore the requirement of an accepting impaired class was not satisfied. 11 U.S.C. § 1129(a)(10). For the reasons articulated below, we affirm as to both orders.

## JURISDICTION AND STANDARDS OF REVIEW

The bankruptcy appellate panel has jurisdiction over this appeal pursuant to the provisions of 28 U.S.C. § 158(a) and (c)(1), and we review the bankruptcy judge's findings of fact only for clear error. F.R.Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). "A finding of fact is clearly erroneous when, after review-ing the evidence, the appeals court is 'left with the definite and firm conviction that a mistake has been committed.'" *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991). We review conclusions of law *de novo;* and matters committed to the discretion of the bankruptcy court are reviewed for abuse of discretion only. *In re DN Associates*, 3 F.3d 512, 515 (1st Cir.1993) (a district court reviews a bankruptcy court's judgment in the same manner as the court of appeals reviews lower court proceedings; "applications of law are reviewed de novo and are set aside only when they are made in error or constitute an 'abuse of discretion.'").

## VACATUR OF DISMISSAL AND REINSTATEMENT OF THE CASE

### a. Facts and Procedural History

PonceBank first challenges the order by which the bankruptcy judge vacated his earlier order of dismissal and reinstated the Chapter 11 case. The relevant facts and procedural history are as follows.

The debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on January 24, 1995, and PonceBank, a secured creditor, moved to dismiss the case as a "bad faith" filing. On September 14, 1995, at a pretrial conference on the motion, the court granted PonceBank until October 16, 1995, to file a motion for summary judgment on its request for dismissal, and required the debtor to respond to the motion for summary judgment within twenty days. PonceBank filed its motion for summary judgment on September 26, 1995. On October 19, 1995, with no opposition to the motion having been filed, the court dismissed the case with prejudice for a period of one year.[1]

On November 8, 1995, the debtor filed a motion to vacate and set aside the order of dismissal, explaining that although the motion for summary judgment was received in the office of debtor's counsel on September 27, counsel's secretary inadvertently misfiled the motion without having brought it to counsel's attention. Counsel did not respond to the motion because he did not become aware of it until after he received the order dismiss-

---

1. The order was dated October 19, 1995, but was not entered on the docket until October 30, 1995.

ing the case. Counsel's secretary attested to this explanation in a supporting affidavit attached to the motion. The motion to vacate also addressed the motion to dismiss and noted that on November 1, 1995, before counsel had become aware of the motion for summary judgment, the debtor had filed an amended plan of reorganization and disclosure statement. The motion to vacate did not include a response to the motion for summary judgment but requested additional time in which to respond to that motion; and on November 20, 1995, before the court acted on the motion to vacate, the debtor filed its response to the motion for summary judgment.

On November 13, 1995, PonceBank filed an opposition to the motion to vacate, arguing that the misfiling of the motion and counsel's subsequent failure to respond, especially when he was aware of the order requiring PonceBank to file its motion for summary judgment by a date certain, was not and, as a matter of law, could not amount to excusable neglect. The opposition also noted that the debtor still had not filed a response to the motion for summary judgment, and it asserted that debtor's amended plan of reorganization could not be confirmed and therefore constituted more evidence of the debtor's bad faith.

On November 21, 1995, the day after the debtor responded to the motion for summary judgment, the court granted the motion to vacate. The endorsement order stated:

After considering PonceBank's opposition, as supplemented, the Court grants the motion to vacate dismissal. Based upon the facts and the apparent equity in the estate, the Court finds that it is in the best interest of the estate to hear the contested matter, and consider other alternatives, such as the appointment of a trustee or conversion to Chapter 7.

The order was granted without a hearing, and the court made no further findings or rulings on the motion. PonceBank did not file its notice of appeal from this order until November 25, 1996.

**b. *Arguments***

Under Fed.R.Civ.P. 60(b)(1), made applicable in bankruptcy cases by Fed.R.Bankr.P. 9024, the court may relieve a party from a final judgment or order for excusable neglect, and it was on that basis that the court granted the motion to vacate the order of dismissal. Now, on appeal, PonceBank argues that the bankruptcy court abused its discretion because, where the debtor's default was caused by the failure of counsel's secretary to bring a timely-served motion to counsel's attention in time to file a response, the debtor had, as a matter of law, failed to demonstrate excusable neglect.

In response, the debtor does not argue excusable neglect but argues instead that for lack of a timely appeal from the order allowing the motion to vacate, this court lacks jurisdiction over the appeal from that order. While conceding that the vacatur was interlocutory, the debtor nonetheless contends that the ten-day period for appealing from the order began to run upon its entry, not from the date of the order of confirmation. Therefore, the debtor argues, PonceBank's failure to file a notice of appeal within that time requires that the appeal from that order be dismissed for lack of jurisdiction.

**c. *Excusable Neglect***

■ We need not address the debtor's jurisdictional challenge where the merits of the appeal are readily dispatched. *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 492 (1st Cir.1997) (appellate court need not resolve appellee's jurisdictional challenge where appeal would falter on merits even assuming jurisdiction). PonceBank argues (incorrectly) that if a party's failure to respond timely is due to carelessness or negligence, then, as a matter of law, that failure cannot constitute "excusable neglect" within the meaning of Fed.R.Civ.P. 60(b). The Supreme Court has rejected this argument. *In Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), it held that relief under the "excusable neglect" standard, as used in F.R.Bankr.P. 9006(b)(1), "is not limited to situations where the failure to timely file is due to circumstances beyond

the control of the filer." *Id.*, at 391, 113 S.Ct. at 1496. Rather, by employing that standard, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Id.*, at 388, 113 S.Ct. at 1495. More to the point, the Court reached this conclusion, in part, on the strength of its observation that, "at least for purposes of Rule 60(b)," the rule at issue in this proceeding, "'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.*, at 394, 113 S.Ct. at 1497. And the First Circuit has held that *Pioneer*'s understanding of "excusable neglect" applies to that term as used in F.R.Civ.P. 60(b). *Pratt v. Philbrook*, 109 F.3d 18 (1st Cir.1997) (vacating order denying motion to vacate for excusable neglect under Rule 60(b)(1), and remanding for reconsideration in light of *Pioneer*).

■■■ *Pioneer* further established that the determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. On appeal, that determination is reviewed for abuse of discretion. *Id.*, at 398, 113 S.Ct. at 1499–1500. The record shows that in failing to respond timely to the motion to dismiss, the debtor acted negligently, but not in bad faith; that the debtor moved to vacate the order of dismissal without undue delay; that there appeared to be equity in the estate; and that the bankruptcy court determined that the estate would be best served by considering options other than dismissal. In these circumstances, the vacatur was well justified and clearly not an abuse of discretion.

### ARTIFICIAL IMPAIRMENT

PonceBank also contends that the court erred in confirming the amended plan of reorganization because the evidence established that the only "impaired" classes of creditors that accepted the plan were classes that the debtor had impaired "artificially"— *i.e.*, without valid cause—and, therefore, the debtor had not satisfied 11 U.S.C. § 1129(a)(10), the requirement of an accepting impaired class. The bankruptcy judge overruled this objection, stating that Ponce-Bank had not sustained its burden on the issue. PonceBank contends that the evidence required a finding that the classes in question were not validly impaired.

#### a. *Facts and Procedural History*

The debtor's amended plan of reorganization separated the creditors into seven classes, with only one class described as unimpaired:

| Class | Creditors in Class | Type of Claims | Impaired? |
|-------|--------------------|----------------|-----------|
| 1.1 | PonceBank | Secured | Yes |
| 1.2 | Granite & Marble Monuments, Inc. | Secured | Yes |
| 2 | Administrative claimants entitled to priority under § 507(a)(1) | Priority | No |
| 3 | Wage claimants entitled to priority under § 507(a)(3) | Priority | Yes |
| 4 | Tax claimants entitled to priority under § 507(a)(7) | Priority | Yes |
| 5.1 | Unsecured claimants of $2,000 or less | Unsecured | Yes |
| 5.2 | Unsecured claimants of over $2,000 | Unsecured | Yes |

The plan provided for payment of all claims in full, including interest from the date of the bankruptcy filing, but (except for Class 2) it did not provide for payment on the effective date of confirmation. Rather, all classes were to be paid by deferred payments. With respect to PonceBank, the plan provided for ten years of monthly payments of principal and interest according to a fif-

teen year amortization schedule, with interest at nine percent from July 20, 1995, and a balloon payment of $721,493 at the end of that term; however, the debtor would retain the option of paying-off the claim sooner, either through refinancing or through sale of some or all of its principal asset, a cemetery, as a going concern. With respect to Granite & Marble Monuments, Inc., the plan provided for payment in fifteen equal annual installments at eight percent annual interest. Priority wage claimants were be paid in full three months after the effective date of the plan. Priority tax claimants were to be paid in installments over five years from the effective date. Class 5.1 unsecured creditors were to be paid in two equal installments, the first on May 15, 1996, or thirty days after the effective date, whichever is later, and the second six months later. Class 5.2 unsecured creditors would receive ten equal semi-annual installments, commencing May 15, 1996, or thirty days after the effective date, whichever is later. The plan clearly contemplated that the debtor would continue in business after confirmation, and the debtor presented evidence that it would have to remain in operation to generate the cash needed to finance the plan.

PonceBank raised the present issue for the first time at the confirmation hearing, which was held on September 9, 1996.[2] See Transcript, pp. 55–58, 67–68, 75, 83–84. Its argument is as follows: the debtor had sufficient cash on hand to pay the claims of all classes other than PonceBank immediately on the effective date of confirmation. Consequently, deferral of payment to those classes was unnecessary and served only to create impaired classes whose acceptance would permit the debtor to satisfy § 1129(a)(10) and to obtain plan confirmation over the objection of PonceBank and without the acceptance of a truly impaired class. Without these unnecessarily impaired classes, only PonceBank's class would truly be impaired; and with Pon-

ceBank having voted to reject the plan, section 1129(a)(10) would not be satisfied, and the plan would not be confirmable.

In support of its objection to confirmation, PonceBank cited the Monthly Financial Report that the debtor submitted to the United States Trustee for the month ending July 31, 1996. The report, dated August 13, 1996, indicated that as of July 31, 1996, the debtor had a cash balance of $319,117.94. PonceBank did not specify how much cash would be necessary to pay the claims of all creditors on the effective date of confirmation, and it offered no evidence of the debtor's accrued expenses and other cash needs as of the effective date of confirmation.

Earlier in the hearing, the debtor's president, Mr. Angel Castro, testified that for the postconfirmation period, the debtor was projecting gross income of $120,000 per month, and net income after taxes of $24,000. He also stated that debt service under the plan would require $23,000 per month.

In considering its argument, Judge Lamoutte repeatedly inquired of PonceBank what facts and evidence existed to establish an artificial impairment of classes, Transcript, p. 75, and noted that the monthly operating report on which PonceBank was relying showed the debtor's cash balance and cash flow but did not reflect accrued expenses, about which there was no evidence. Transcript, pp. 58, 67, 83. When PonceBank offered nothing but the Monthly Financial Report, Judge Lamoutte stated that although he followed the case law and the rationale offered in support of the artificial impairment argument, "I don't have the facts to make the finding that the Debtor has enough cash available to pay all unsecured creditors in full and continue operations." Transcript, p. 83. He stated that, in order to sustain this objection to confirmation, "I would have to ... be able to make a factual finding that the debtor has ... sufficient cash to pay all creditors in

2. PonceBank filed an objection to confirmation of the amended plan and articulated therein an artificial impairment argument, but that argument did not pertain to the same facts that form the basis for this appeal. (In the objection, PonceBank argued that the debtor had artificially impaired Class 5.2 by impermissibly including insiders in that class for the sole purpose of obtaining the acceptance of an impaired class. The bankruptcy court rejected that argument, and PonceBank does not now revisit it on appeal.) The objection did not raise the issue of artificial impairment that PonceBank now raises on appeal. The debtor does not argue that the artificial impairment issue that is the subject of this appeal was not timely raised below.

full and still continue with his operation." Transcript, p. 67.

At the conclusion of the hearing, the bankruptcy judge took the matter under advisement; and on November 15, 1996, he issued an order confirming the plan and an opinion in support of the order, but his opinion did not address the issue before us now.[3]

### b. *Arguments*

PonceBank argues that the testimony and documentary evidence *required* a finding that the debtor had sufficient funds to pay all creditors (except PonceBank) in full upon confirmation; consequently, the argument continues, the plan lacked acceptance by a validly impaired class and, for failure to satisfy § 1129(a)(10), should not have been confirmed. The evidence to which PonceBank refers includes the testimony of the debtor's president that the debtor was operating with a healthy profit margin—in excess of $40,900 per month after taxes—and that the debtor's actual earnings for 1996 were "in line" with the projections it filed in November 1995 with the amended plan; and the financial projections appended to the debtor's amended disclosure statement. PonceBank also relies on the debtor's Summary of Schedules, which had been filed in the debtor's case but was not among the evidence introduced at the hearing. Lastly, PonceBank also relies or documents that did not exist at the time of the hearing: the debtor's monthly financial

reports for the months of September, October, and November, 1996, which reported ending cash balances of $375,185.15, $415,-963.69, and $426,499.39 respectively.[4]

### c. *Artificial Impairment*

■ If a class of claims is impaired under the plan, the plan cannot be confirmed unless at least one impaired class votes to accept the plan. 11 U.S.C. § 1129(a)(10). The theory of artificial impairment, as advanced by the courts on which the appellant relies, holds that the accepting vote of an impaired class will not satisfy § 1129(a)(10) if the class is impaired without valid cause, usually an economic justification.[5] The bankruptcy court accepted this theory, but ruled that PonceBank failed to prove that the debtor had sufficient funds to pay all accepting impaired classes in full upon confirmation and still continue in operation; therefore, PonceBank had not established that these classes were artificially impaired.[6]

PonceBank challenges the bankruptcy court's findings of fact and, implicitly at least, also challenges the factors considered by the court in determining the impairment issue.

The latter question is one of law, which we review *de novo*. The bankruptcy judge held that the fact that the debtor had sufficient cash to pay the accepting impaired classes in full on the effective date of confirmation did

---

**3.** We are satisfied that the rationale for the bankruptcy court's decision rejecting the artificial impairment argument is adequately stated on the record during the confirmation hearing as recounted above.

**4.** The October and November reports were filed in the case only after the court entered the confirmation order. The September report was filed before the confirmation order, but PonceBank did not move to have it considered in support of its objection to confirmation.

**5.** *Windsor on the River Assocs. v. Balcor Real Estate Fin. (In re Windsor on the River Assocs.),* 7 F.3d 127, 130–133 (8th Cir.1993) (for purposes of § 1129(a)(10), a claim is not impaired if the alteration of rights in question arises solely from the debtor's exercise of discretion); *In re Dunes Hotel Associates,* 188 B.R. 174, 184–189 (Bankr. D.S.C.1995) (where the accepting impaired class was impaired without economic justification, the court denied confirmation, either for artificial impairment, which violates § 1129(a)(10), or for

lack of good faith, which violates § 1129(a)(3)); *In re Fur Creations By Varriale, Ltd.,* 188 B.R. 754, 759–761 (Bankr.S.D.N.Y.1995) ("There must be a showing that the proposed impairment is necessary for economical or other justifiable reasons and not just to achieve 'cram down'."); *In re Investors Florida Aggressive Growth Fund, Ltd.,* 168 B.R. 760, 766–767 (Bankr.N.D.Fla. 1994); *In re Daly,* 167 B.R. 734, 737 (Bankr. D.Mass.1994) (where the debtor impaired a class solely to satisfy § 1129(a)(10) and thereby to force the plan on a truly impaired class that had voted to reject the plan, the impairment violated the requirement of an accepting impaired class, § 1129(a)(10), or the requirement that the plan be proposed in good faith, § 1129(a)(3), or both, and therefore prevented confirmation).

**6.** PonceBank did not object to this allocation of the burden of proof and does not challenge it row on appeal.

not, by itself, render their impairment—the deferral of payment to those classes—unnecessary. Rather, he held that deferral would be unjustified only if the debtor had sufficient cash to pay those classes in full *and still continue operations.* In other words, the bankruptcy judge held that the need to retain cash for continued operation is good cause to defer payment of creditors under a plan.

■ While PonceBank does not challenge this ruling expressly, the premise of its argument is that if the evidence required a finding that the debtor had sufficient cash to pay all the impaired classes in full on the effective date of confirmation, then the classes were artificially impaired, and confirmation should have been denied. If PonceBank means thereby to argue that a debtor's need of cash for continued operation of its business is not valid cause to defer payment to creditors under a plan, we disagree. Where the plan contemplates the debtor's continuation in business and the reasonable cash needs of that business—to meet accrued and foreseeable expenses and to make reasonable provision for contingencies—require some or all of the cash on hand that might otherwise be paid to plan creditors on confirmation, that need justifies the plan's deferment of payment to the plan creditors. A plan need not, and in fact it may not, compromise its own feasibility. See 11 U.S.C. § 1129(a)(11) (requiring a showing of "feasibility" as a condition of confirmation). PonceBank has offered no authority to the contrary. We agree with the bankruptcy judge's conclusion that a debtor's requirement of cash for continued operation is valid cause to defer payment to creditors and thereby to impair their claims.

■ This brings us to PonceBank's main argument on appeal: that the evidence required a finding that the debtor had sufficient funds to pay all accepting impaired classes in full upon confirmation. We review the bankruptcy judge's findings of fact only for clear error, and a review of the record reveals the following. The evidence indicated that as of July 31, 1996, the debtor had a cash balance of only $319,117.94. There is no evidence of the debtor's cash balance at any date later than July 31, 1996. Nor is there evidence, or even an offer of proof, as to the amount of the debtor's accrued expenses or its postconfirmation cash needs. The one exception is that, under the plan, the debtor would have to make payments to PonceBank of more than $14,000 per month.[7] The plan contemplated that the debtor would continue in business after confirmation, and the success of the plan depended on its continuation as a going concern. The president testified that at the time of the hearing on confirmation, the debtor was averaging net income after taxes of approximately $24,000 per month (not, as PonceBank suggests, $40,900 per month, which was a cash flow figure that did not reflect accrued expenses). PonceBank did not specify, much less establish, the amount of cash that the debtor would have needed to pay the claims of all creditors (other than itself) upon confirmation, and we find no answer to that question in the record.[8] This is the extent of the record below.

7. The record does not specify the amount of the monthly payment, but it does supply the information from which it can be calculated: on a debt of $1.4 million, amortized over fifteen years with annual interest at nine percent, the monthly payment is $14,199.73

8. PonceBank now states that that amount was $396,101.00 but does not explain how it arrives at that number. More importantly, PonceBank did not present either the number or its method of calculation to the bankruptcy judge. Such arguments cannot be presented for the first time on appeal; we may not entertain arguments not presented to and argued fully before the bankruptcy judge. *In re Roberts,* 175 B.R. 339 (9th Cir. BAP 1994) (general rule is that appellate court will not consider issues raised for the first time on appeal).

Moreover, the only evidence before the bankruptcy court on this issue was inconclusive. It consisted of testimony by the debtor's principal that "aggregate debt was around $1.8 million, including the debt of ... PonceBank," but this figure was only an approximation, and the testimony did not specify whether the figure included administrative claims. PonceBank also relies on the debtor's Summary of Claims. The Summary quantifies total liabilities, as of the petition date, at $1,786,276.86, but the Summary (i) was not cited at the confirmation hearing, (ii) does not indicate the *allowed* amount of claims, which can vary from the amount set forth in the schedules, and (iii) does not account for administrative claims, which by definition arise postpetition.

PonceBank would include other evidence in the record on appeal. First, it asks us to consider the debtor's monthly financial reports for the months of September, October, and November, 1996, which reported ending cash balances of $375,185.15, $415,963.69, and $426,499.39 respectively. However, these reports were not part of the record at the confirmation hearing and did not even exist at the time of the hearing—the October and November reports were produced and filed only after entry of the confirmation order. Regardless of their alleged relevance, they were not part of the record below, so we may not consider them. PonceBank also makes reference to the financial projections appended to the debtor's amended disclosure statement, but failed to include these in the record on appeal, and so they are not before us, either.

On the basis of the record properly before us, we find no clear error. The bankruptcy court had no information about the debtor's accrued expenses and postpetition cash needs, nor an offer proof as to the amount needed to pay all claims in full upon confirmation. This alone was sufficient basis for the court's finding. However, even if we were to assume that the Debtor had no accrued expenses and that, as PonceBank now suggests, the record demonstrated that the amount needed to pay all claims was $396,101.00, the bankruptcy court's finding would still prove quite sound. With cash on hand of $319,117.94 on July 31, 1996, and monthly net earnings of $24,000 per month between then and the date of confirmation, the debtor's cash on hand as of that date would have been $403,117.94. This would be insufficient to pay all claims in full ($396,101) *and* make the initial plan payment to PonceBank (approximately $14,000); and clearly there would be no reserve for contingencies. Moreover, it assumes that net earnings would be realized entirely in cash. In short, the evidence did not *require* a finding that the debtor had sufficient funds to pay all accepting impaired classes in full upon confirmation and to continue in operation; therefore, we find no clear error to have been committed by the bankruptcy judge.

Finally, we note that at oral argument, PonceBank raised for the first time a second artificial impairment issue: that Class 1.2, the class containing the secured claim of Granite & Marble Monuments, Inc., should have been included in the same class as PonceBank but was separately classified only to create an accepting impaired class. We will not entertain this argument because: (1) PonceBank did not raise it in its brief, thereby taking Memorial Products by surprise, and (2) section 1129(a)(10), the requirement of an accepting impaired class, would be satisfied even without the acceptance of Class 1.2.

## CONCLUSION

For the reasons articulated above, the orders appealed from are AFFIRMED.