In re Jamie MORETTI, Debtor.

Jamie Moretti, Appellant,

v.

Ernest Bergeron, David Jones,
Rosemary Jones and Sharon
Osenkowski, Appellees.

No. RI 00–086.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 30, 2001.

Joseph F. Hook, Providence, RI, on brief for the Appellant.

Paul Foster, Lincoln, RI, for David Jones and Rosemary Jones.

Sharon Osenkowski, Wyoming, RI, pro se.

James E. Kelleher, Revens, Lanni, Revens & St. Pierre, Warwick, RI, for Ernest Bergeron.

Before KENNER, FEENEY, BOROFF, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

Debtor Jamie Moretti appeals from an order of the bankruptcy court, in his re-opened case under Chapter 7 of the Bankruptcy Code, denying him leave to amend his Schedule of Unsecured Nonpriority Creditors by listing four omitted creditors. For the reasons set forth below, we affirm.

*FACTS AND PROCEDURAL HISTORY*

The Debtor, a realtor and homebuilding contractor, filed his petition for relief under Chapter 7 of the Bankruptcy Code on October 21, 1994. With his petition he filed the schedules required by 11 U.S.C. § 521(1), including a schedule of unsecured creditors. The Chapter 7 Trustee filed a statement that the estate had no assets available for distribution to creditors. In due course, the court awarded the Debtor a discharge, and, on January 5, 1996, closed his case.

The case remained closed and inactive until January 14, 2000, when the Debtor moved to reopen it in order "to add ... creditors that were omitted from the original filing." No response having been filed, the court allowed the motion on January 27, 2000, thereby reopening the case.

The Debtor then filed the motion now at issue: his Motion to Add Omitted Creditors. By this motion he sought leave to amend his Schedule F, the schedule of creditors holding unsecured nonpriority claims, by adding to it the names and claims of four creditors whom, the motion stated, he had mistakenly or inadvertently omitted from his original Schedule F: David and Rosemary Jones, who (the motion stated) were jointly asserting a disputed claim for $21,000 plus interest and attorney's fees; Ernest Bergeron, also asserting a disputed claim for $21,000 plus interest and attorney's fees; and Sharon Osenkowski, who held a judgment against the debtor for $4,563.84. All four creditors objected to the motion. As elaborated upon at the hearing on the motion, the objections, and the Debtor's responses, were as follows.

Sharon Osenkowski, whose claim against the Debtor is based on poor workmanship in his construction of her home, brought suit against the Debtor in December 1994 and obtained judgment against him in 1997 for $4,563.84. She objected to the motion to add omitted creditors on four grounds. First, she stated that the Debtor first learned about her claim against him no later than November 1994—when she served him with a complaint she filed against him with the Rhode Island Building Code Commission—after he had filed his petition and schedules but several months before his discharge entered. He

could have amended his schedules then but did not, and therefore he has failed to show that his omission of her claim was due to mistake, inadvertence, or excusable neglect. The Debtor responded that he omitted this claim because he did not know of it at the time of the bankruptcy filing, but he offered no explanation for his failure to amend in November 1994. Second, Osenkowski contended that the Debtor failed to disclose the bankruptcy to her until some five years after his discharge entered (and three years after she obtained judgment against him), that consequently she incurred significant legal costs in pursuing her claim against him that she would not have incurred had he timely disclosed his bankruptcy filing, and that it would therefore be inequitable to permit him to schedule her debt at this juncture. The Debtor offered no explanation for his failure to notify her sooner of his bankruptcy filing. Third, Osenkowski argued that her claim should not be listed because it did not arise until after the bankruptcy filing, such that her claim is not, or should not be, affected by this case at all; the Debtor disagrees and contends that this claim arose prepetition. And fourth, Osenkowski argued that, where the Debtor has delayed five years in notifying a creditor of his bankruptcy filing, it is fundamentally unfair to subject that creditor to the discharge; the Debtor articulated no response to this argument.

David and Rosemary Jones contend that their claim against the Debtor arises from fraudulent misrepresentations he allegedly made to them in his sale of real estate to them in 1986. They commenced suit against the Debtor only in 1996 but contend that he was aware of their claim against him at the time of his bankruptcy filing and that his failure to list their claim was not inadvertent. They further contend that, although they filed suit against him in 1996, he did not notify them of the bankruptcy until the eve of trial in January 2000, when he filed a suggestion of bankruptcy in the state court proceeding; by this time they had incurred significant legal expenses. Accordingly, they objected to the Debtor's late scheduling of their debt on three grounds: that the underlying claim is one for fraud, that the omission was deliberate and not inadvertent, and that they have been greatly prejudiced by his delay in notifying them of his bankruptcy filing. The Debtor agreed that theirs is a prepetition claim, denied that he committed fraud in the sale of the property, denied that he was aware of the claim at the time of the bankruptcy filing, and, as explanation for his extraordinary delay in notifying the Joneses and the state court of his bankruptcy filing, stated that the attorney who filed the answer to the Jones complaint on his behalf had withdrawn, and that the Debtor had replaced him with present counsel not long before the scheduled trial date.

Ernest Bergeron also objected to the motion. He is a former owner of the property at issue in the Jones litigation. The Joneses named him as an additional defendant in their suit against the Debtor, and Bergeron in turn filed a cross claim against the Debtor. Bergeron objected to the late scheduling of his debt on the basis that the Debtor's omission of his debt from the original schedule of unsecured creditors was not inadvertent; Bergeron contends that litigation over this property commenced in 1992, and that the Debtor has been aware of and integral to the litigation since its inception. The Debtor maintains that he became aware of Bergeron's claim only in 1996.

On April 25, 2000 and after the hearing on the motion, at which no evidence was offered and the objectors declined to examine the Debtor, the bankruptcy court denied the motion. The court issued no

memorandum of decision but articulated its reasons on the record at the hearing. The court stated that the decision whether to permit amendment was discretionary and that Debtor bore the burden of showing good cause why he should be permitted to list the creditors, including "that [the debtor] left [the creditors] out unintentionally or with good cause or with understandable cause." The Court then stated that, because "at least some" of the omitted creditors had claims or administrative litigation pending against the Debtor before his discharge entered, there arose a presumption of intentional omission that the Debtor had failed to rebut. The court also noted that at least one of the creditors had suffered actual financial prejudice in the form of legal expenses incurred after the bankruptcy case had been commenced. The order itself also included a finding that "actual financial prejudice has been attributed to Creditor Sharon Osenkowski following the filing of the Bankruptcy."

On April 27, 2000, the Debtor filed a motion under F.R.Bankr.P. 9023 to "amend judgment and reconsider," seeking reconsideration of the order of April 25, 2000. David and Rosemary Jones and Sharon Osenkowski filed objections. On August 7, 2000, after first a preliminary hearing and then an evidentiary hearing on this motion, the court entered an order in three parts: (1) the motion to amend schedule F was denied; but (2) the Debtor would be allowed to amend Schedule F if, by August 21, 2000, he payed the reasonable fees and costs of the omitted creditors, incurred as a result of their being omitted from the original bankruptcy petition; and (3) the fees and costs incurred by David and Rosemary Jones, as submitted to the Bankruptcy Court on July 20, 2000, would be deemed reasonable unless the Debtor objected to them on or before August 21, 2000, and requested a hearing on their reasonableness. As grounds for denying the motion, the court stated that the Debtor had not met the threshold requirement, on a motion for reconsideration, of presenting evidence and arguments that were not reasonably available to the Debtor the first time around. On the merits of the motion, he adopted the arguments advanced by the creditors' attorneys, but without specifying what those were. He offered no explanation for his decision to permit amendment on condition that the Debtor pay the creditors' fees and costs. The Debtor then timely filed a notice of appeal from both the order on reconsideration and the original order denying leave to amend.[1] He has not paid the creditors' costs and attorneys' fee and, consequently, the Bankruptcy Court has not permitted him to amend his Schedule F.

### ARGUMENTS ON APPEAL

On appeal, the Debtor contends that the bankruptcy judge abused his discretion by denying his motion to amend. He argues that the court should have permitted amendment for five reasons: (1) to provide him and the omitted creditors with a mechanism to determine the dischargeability of the creditors' claims; (2) to afford the omitted creditors an opportunity to seek determinations of nondischargeability under 11 U.S.C. § 523(a)(2), (4), or (6), which, absent the scheduling of their debts, they would be precluded from doing; (3) to allow him to fulfill his legal duty under § 521(1) of the Bankruptcy Code to

---

1. The debtor timely moved under F.R.Bankr.P. 9023 to alter or amend the original order. Under F.R.Bankr.P. 8002(b), if any party makes a timely motion to alter or amend the order under Rule 9023, "the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding." F.R.Bankr P. 8002(b).

list all creditors; (4) to ensure that if any assets are later discovered and distributed to creditors, the omitted creditors will be included in that distribution; and (5) with respect to the claim of Sharon Osenkowski, to put the state courts on notice, in any future proceedings as to her claim, that the claim has been discharged.

The Debtor also contends that the bankruptcy judge erred by requiring, as a condition of amendment, that he prove that the creditors were omitted by mistake, inadvertence, or lack of fraud. In the absence of evidence that the omission was fraudulent or intentional, he argues, he should be permitted to amend. The reason for omission of a debt is irrelevant to its dischargeability, he argues, and courts are not free to condition relief that Congress made available in the Bankruptcy Code on factors that Congress deliberately excluded from consideration.

Though they appear to have been given notice of the appeal and of the briefing and oral argument schedules, the omitted creditors have not filed briefs or otherwise appeared in this appeal.

## JURISDICTION AND STANDARDS OF REVIEW

■ The Bankruptcy Appellate Panel has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1) and (c). The Panel reviews rulings of law *de novo* and findings of fact only for clear error. *In re La-Roche,* 969 F.2d 1299, 1301 (1st Cir.1992); F.R.BANKR.P. 8013 (findings of fact shall not be set aside unless clearly erroneous). Decisions entrusted to the discretion of the bankruptcy judge are reviewed for abuse of discretion. "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied

upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Independent Oil & Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 14 (1st Cir.1996) ("a finding of abuse usually entails proof that the nisi prius court, in making the challenged ruling, ignored pertinent elements deserving significant weight, considered improper criteria, or, though assessing all appropriate and no inappropriate factors, plainly erred in balancing them").

## DISCUSSION

■ The Bankruptcy Code states that "[t]he debtor shall file a list of creditors and, unless the court orders otherwise, a schedule of assets and liabilities." 11 U.S.C. § 521(1). Except when the petition is accompanied by a schedule of liabilities, a debtor in a voluntary case must file the list of creditors, including the name and address of each creditor, with the petition itself, at the very start of the case, though, for cause shown, the court may extend the time to file the list. F.R.BANKR.P. 1007(a)(1) and (4). Subject to exceptions not applicable here, the schedule of liabilities "shall be filed with the petition in a voluntary case or, if the petition is accompanied by a list of all the debtor's creditors and their addresses, within 15 days thereafter," though (again) the court may extend the time for cause shown. F.R.BANKR.P. 1007(c).

■ Rule 1009(a) expressly permits a debtor to amend the schedules "as a matter of course at any time before the case is closed," F.R.BANKR.P. 1009(a),[2] but it specifies no standard for amendment after the

---

2. Rule 1009(a) F.R.BANKR.P. states:
   A voluntary petition, list, schedule, or statement may be amended by the debtor as a

matter of course at any time before the case is closed.

case is closed. The relevant standard is supplied by Rule 9006(b)(1)[3]: subject to exceptions not applicable here, when the bankruptcy rules require that an act be done, or permit it to be done, within a specified period and the movant moves to enlarge the period only after it expires, "the court for cause shown may at any time in its discretion ... permit the act to be done where the failure to act was the result of excusable neglect." F.R.BANKR.P. 9006(b)(1). Therefore, a debtor seeking to schedule a creditor after the case is closed bears the burden of establishing (1) that failure to amend the list of creditors and the schedule of liabilities before the close of the case—that is, within the time permitted by Rule 1009(a)—was the result of excusable neglect and (2) that cause exists to schedule the creditor. The determination of whether particular circumstances constitute cause to amend is entrusted to the sound discretion of the bankruptcy judge. F.R.BANKR.P. 9006(b)(1) ("the court ... *may ... in its discretion ...* permit the act to be done" (emphasis added)). On appeal we review that determination as we do the threshold determination that failure to amend before the close of the case was the result of excusable neglect: for abuse of discretion. *Poncebank v. Memorial Products Co., Inc. (In re Memorial Products Co., Inc.)* 212 B.R. 178, 181 (1st Cir. BAP 1997) (reviewing ruling on excusable neglect for abuse of discretion). We will address first those of the Debtor's arguments that concern only the threshold requirement of excusable neglect

and then those that bear upon the existence (or not) of cause to amend.

#### a. *Excusable Neglect*

The Debtor first argues that the bankruptcy judge "erred as a matter of law and abused his discretion in placing the burden on the debtor to prove that the omitted creditors were omitted by mistake, inadvertence, or lack of fraud." In expanding on this argument, the Debtor first seems to argue that the court erred in its allocation of the burden: the burden of proving mistake, inadvertence, and lack of fraud should rest on the creditors, not on the Debtor. Later, however, the Debtor goes further, arguing that the reason for the Debtor's failure to list the creditors during the case is entirely irrelevant to his motion to amend, even as a defense.

Before addressing these arguments, we note that the bankruptcy judge nowhere employed the terms "mistake," "inadvertence," and "lack of fraud." Rather, he stated that the Debtor bore the burden of proving that he had omitted the creditors "unintentionally or with good cause or with understandable cause." We think it clear that the bankruptcy judge equated this test with "excusable neglect," and that this was the standard he in fact applied. Likewise, the requirement that the Debtor now challenges under the nomenclature of "mistake, inadvertence, and lack of fraud" is this same requirement of excusable neglect.

---

**3.** Rule 9006(b)(1) F.R.BANKR.P. states:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion

(1) with or without motion or notice order the period enlarged if the request made therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

■ The Debtor argues that excusable neglect was neither part of his burden of proof nor relevant even as a defense. We reject both contentions. Rule 9006(b)(1) assigns to the party who failed to perform an act timely, and who then seeks to extend the time only after it has expired, the burden of proving that the failure resulted from excusable neglect. F.R.BANKR.P. 9006(b)(1). Excusable neglect was thus both relevant and part of the Debtor's burden of proof.

■ The Debtor also contends that a debtor "should be allowed to amend his schedules where there is no evidence that the debtor fraudulently or through intentional design omitted the creditors from the bankruptcy petition and where there is no evidence that the creditors have been harmed." This proposition misstates the law. Rule 9006(b)(1) requires more than an absence of evidence of fraudulent or intentional omission and of harm. As we explained above, it requires affirmative showings of excusable neglect and of cause to amend. Moreover, this is not a case in which there is no evidence of intentional design.

■ The Debtor further argues that it was improper to require a showing of excusable neglect because "nowhere in section 523(a)(3) is the *reason* why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt. Courts are not free to condition the relief Congress has made available in the Bankruptcy Code on a factor Congress has deliberately excluded from consideration." Appellate Brief, pp. 10–11, quoting from *In*

*re Beezley,* 994 F.2d 1433, 1439 (9th Cir. 1993) (concurring opinion) (emphasis in *Beezley* ). We reject this argument as inapposite to the issue before us, which is whether the reason for omission of a debt from the bankruptcy schedules is relevant *to late amendment of the schedules* under Rule 9006(b)(1), not to whether the debt is excepted from discharge under 11 U.S.C. § 523(a)(3). The Debtor neither filed a complaint for a determination of dischargeability in the bankruptcy court nor sought leave of that court to file such a complaint; and the bankruptcy judge made no ruling on the dischargeability of the debts at issue, under 523(a)(3) or any other basis. Moreover, as the Debtor himself correctly points out, the late scheduling of these debts, if permitted, would have no effect on their dischargeability.[4] Nor are we aware of any requirement that a debt be scheduled before a party may seek a determination of its dischargeability. In short, the (argued) irrelevance of excusable neglect to dischargeability under § 523(a)(3) has no bearing on the issue before us and does not obviate Rule 9006(b)(1)'s requirement of excusable neglect as a condition of late amendment.

As its last argument under the heading of excusable neglect, the Debtor further contends that it was inappropriate for the court to give weight to certain prejudice that the creditors suffered. The court found prejudice in that, for lack of notice (of the bankruptcy filing and discharge) that the Debtor could and should have given them, the omitted creditors incurred significant legal fees that they would not otherwise have incurred. The Debtor ar-

---

**4.** *In re Beezley,* 994 F.2d 1433, 1434 (9th Cir.1993) (per curiam and concurring opinions) (in a no-asset chapter 7 case in which the court set no bar date for the filing of claims, the late-scheduling of a debt would have no effect on its dischargeability); *Judd v. Wolfe,* 78 F.3d 110 (3rd Cir.1996) (same); *In re Thibodeau,* 136 B.R. 7, 10 (Bankr.D.Mass. 1992) (Kenner, J.) (same); *In re McKinnon,* 165 B.R. 55, 56 (Bankr.D.Me.1994) (Haines, J.) (same); *In re Jones,* 191 B.R. 265, 268 (Bankr.D.Mass.1996) (Hillman, J.) (same); *In re Walker,* 195 B.R. 187, 200 (Bankr.D.N.H. 1996) (Yacos, J.) (same).

gues that this type of prejudice is irrelevant to whether he should be granted leave to amend. The only relevant prejudice, he contends, is the creditor's loss of a right to participate in a dividend or to file a time-sensitive complaint for nondischargeability (absent which the debt would be deemed dischargeable).

■■■■■■ We find no error here. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including, among other things, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993). Financial prejudice in the form of legal costs incurred for failure of the Debtor to provide prompt notice of his bankruptcy filing and discharge to creditors whom he knew to be taking postpetition legal action against him is relevant to this analysis. All other things being equal, neglect will be less excusable when it has caused substantial prejudice than when it has not.

Moreover, the financial prejudice to these creditors was relevant to at least two of the "relevant circumstances" enumerated in *Pioneer*. First is bad faith: the fact that the Debtor knowingly permitted creditors to proceed with legal action against him and delayed for years before notifying them of his bankruptcy and discharge is indicative of bad faith. Second, the length of the delay in each case has had substantial impact on judicial proceedings. Had Sharon Osenkowski been notified and scheduled when the Debtor first learned of her complaint against him and his bank-

ruptcy case was still young, her suit would not have gone forward unless and until she obtained a determination in bankruptcy court that her debt was excepted from discharge. Instead, unaware of the bankruptcy, she incurred significant fees proceeding in a different direction. David and Rosemary Jones and Ernest Bergeron should have been notified of the bankruptcy and discharge when the Joneses first filed suit in 1996, if not sooner, but because the Debtor did not notify them until late in 1999, they incurred fees that they might not have incurred, or would have incurred differently, had they known they would have to contend with the discharge as an affirmative defense. All this was relevant to the excusable neglect analysis, and the court committed no error by considering it.

**b.** *Cause to Amend/Excusable Neglect*

■■■■■■ In addition to excusable neglect, the Debtor must establish that there is cause to amend. F.R.Bankr.P. 9006(b)(1). In other words, he must demonstrate that amending the schedules as he proposes would serve a significant purpose and not be inconsequential. Where the purpose is to secure a benefit for the debtor—as are at least two of the purposes discussed below—the purpose is also relevant to the excusable neglect analysis, because that analysis must take account of prejudice that the debtor would suffer if leave to amend were not granted. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. at 395, 113 S.Ct. at 1498 (excusable neglect analysis should take account of danger of prejudice to the debtor).

The Debtor contends that the bankruptcy judge failed to consider or to give sufficient weight to five purposes that would be served by permitting amendment. The first two concern dischargeability: permit-

ting amendment would (1) provide him and the omitted creditors with a mechanism to determine the dischargeability of the creditors' claims and (2) afford the omitted creditors an opportunity to seek determinations of nondischargeability under 11 U.S.C. § 523(a)(2), (4), or (6), which, absent the scheduling of their debts, they would be precluded from doing. The Debtor does not explain how the amendment of his schedules would yield these benefits.

We need not dwell on these two purposes. The Debtor never moved in the Bankruptcy Court for establishment of a mechanism to determine the dischargeability of the omitted claims. More importantly, no law or rule requires that a creditor be scheduled before such a determination can be had. And the scheduling of a claim does not automatically give rise to any such mechanism or to a new period for filing complaints for determination of dischargeability. In short, the creation of a procedure for adjudicating the dischargeability of omitted debts is not cause to permit amendment.

The Debtor next argues that the court should have permitted him to schedule the omitted creditors for two further reasons: (1) to allow him to fulfill his legal duty under § 521(1) of the Bankruptcy Code to list all creditors and (2) to ensure that if any assets are later discovered and distributed to creditors, the omitted creditors will be included in that distribution. We agree that a debtor should fulfill his or her duty to schedule creditors, but timing is important. The principal purpose of scheduling a creditor is to enable the bankruptcy court to give timely notice of the bankruptcy filing to the creditor. This in turn enables the creditor to participate in the case: by examining the debtor and his schedules, searching for assets, moving to dismiss the case, filing objections to dis-

charge or complaints for determination of the dischargeability of a debt, objecting to claims of exemption, or filing a proof of claim (if the estate has assets for distribution).

Listing the debts at this juncture would serve only to ensure the creditors' participation in a future dividend, should there be one. But that purpose is contingent and exceedingly unlikely to ripen into actual cause to amend—six years after this Debtor's bankruptcy filing, his estate has no known assets for distribution. If and when assets are discovered, the Debtor must schedule these debts, but, especially in view of the administrative burden of reopening a case, the court need not permit amendment before then. A court may permit amendment for this purpose, but it need not.

Lastly, the Debtor argues that the court should have permitted amendment because, with respect to the claim of Sharon Osenkowski, amendment of the schedules would put the state courts on notice, in any future proceedings as to her claim, that the claim has been discharged. The Debtor does not explain how the listing of Osenkowski's debt would have this effect.

We can think of no reason why the scheduling of this debt would constitute notice that the debt has been discharged. As we stated earlier, the late scheduling of a debt has no effect on its dischargeability; it does not bring an otherwise nondischargeable debt within the scope of the discharge. No court has yet determined whether Osenkowski's debt has in fact been discharged or, if it was discharged, whether her postpetition judgment is nonetheless valid because the debtor did not timely interpose his discharge as a defense to her complaint to

**612**

recover the prepetition debt.[5] To our knowledge, Osenkowski has nowhere stipulated that her claim has been discharged and that her judgment is ineffective. Osenkowski has not in her response to the motion to amend stated her position on these issues, but she has not been obligated to do so: the motion to amend simply has not put the dischargeability of her claim and the effectiveness of her judgment into controversy.

Therefore, if the late scheduling of this debt were to send a message to state courts and the creditor herself that the debt is within the scope of the discharge, it would do so as a result of a misunderstanding of the law: the erroneous belief that the late listing of a debt brings it within the scope of the discharge. Unfortunately, many debtors, creditors, and even attorneys do so misunderstand the law [6]; perhaps because the law (on the dischargeability of unlisted debts) is somewhat counterintuitive, this general misunderstanding of the law seems well entrenched.[7] Bankruptcy judges are aware of this and may be reluctant to permit the late listing of a debt, absent compelling cause, precisely for fear that the import of the listing will be misunderstood, thereby causing more mischief than the listing itself can justify. We need not determine what weight they may properly give this factor. Certainly judges commit no error when they do not view the fostering of this misunderstanding as cause in itself to permit amendment.

### c. *Conclusion*

In summary, we find no abuse of discretion as to either excusable neglect or cause

to amend and therefore AFFIRM the order denying leave to amend.

---

5. We express no opinion on these issues.

6. See for example the comments of Ms. Osenkowski's attorney at the hearing held in the bankruptcy court on July 20, 2000. (Transcript pp. 53–54)

7. See the concurring opinion of Judge O'Scannlain in *In re Beezley*, 994 F.2d at 1434, esp. Part III at 1437–1439.