**In the Matter of Jack J. GULLONE, Debtor.**

**No. 01–19122/JHW.**

United States Bankruptcy Court, D. New Jersey.

Nov. 21, 2003.

---

George Polis, Esq., Ventnor, NJ, for the Debtor.

Eric A. Savage, Esq., Littler Mendelson, Newark, NJ, for Compass Group USA, Inc.

JUDITH H. WIZMUR, Bankruptcy Judge.

The debtor moves to reopen his Chapter 7 case to declare that a debt due to his former employer is discharged. The debt was not listed on the debtor's schedules, and was reduced to judgment after the debtor's case was closed. I must determine whether the debt was a pre-petition claim which may be discharged, or a claim which arose after the debtor's bankruptcy filing, which may not be discharged. For the reasons expressed, I conclude that the debt arose pre-petition, and may be discharged.

### FACTS

The debtor, Jack J. Gullone, filed a Chapter 7 case on September 12, 2001. Listed in the Statement of Financial Af-

fairs was the debtor's pending claim for wrongful employment termination under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1 *et seq.*, against his former employer, Compass Group USA, Inc. d/b/a Chartwells (hereinafter "Chartwells"). Apparently, the Chapter 7 trustee did not administer the claim. According to the debtor, an agreement was reached with the trustee that if the cause of action generated an award in the debtor's favor, the bankruptcy case would be reopened and a distribution made to creditors. The debtor did not list Chartwells as a creditor. A Chapter 7 discharge was issued to the debtor on August 11, 2002. The trustee filed a report of no distribution and the bankruptcy case was closed on August 26, 2002.

The CEPA action was filed pre-petition by the debtor in the Superior Court of New Jersey, Law Division, in May 2001. The action arose out of the debtor's termination by Chartwells in February 2001. Chartwells removed the matter to the United States District Court and filed an answer in June 2001. In its answer, Chartwells requested dismissal of the complaint and an award of attorneys' fees pursuant to N.J.S.A. 34:19–6. Chartwells did not learn of the debtor's pending bankruptcy case until January 2002 during a deposition of the debtor. The debtor continued to prosecute the CEPA action during the pendency of the bankruptcy case, and was represented in both matters by the same counsel.

On October 7, 2002, the United States District Court granted Chartwells' motion for summary judgment, denied the debtor's motion for leave to file an amended complaint, and granted Chartwells' application for counsel fees. By order dated December 13, 2002, the court entered an award of counsel fees and costs in the amount of $80,678.54.[1] The debtor filed a Notice of Appeal with the Third Circuit Court of Appeals on February 11, 2003. The issue of whether the appeal was timely filed has been briefed and is pending before the Court of Appeals.

On June 25, 2003, the parties in the case appeared before Magistrate Judge Donio on post-judgment discovery issues. For the first time, counsel for the debtor informed counsel for Chartwells that the debtor would seek to reopen his bankruptcy case to add Chartwells as a creditor and to discharge Chartwells' claim for attorneys' fees against him. The debtor filed his motion to reopen on July 14, 2003. When the matter was first heard on July 28, 2003, I determined to reopen the case to resolve the issue of whether Chartwells' claim arose pre-petition, and may be discharged, or was a claim which arose after the filing, which may not be discharged.

### DISCUSSION

Under 11 U.S.C. § 727(b), with certain unrelated exceptions designated in 11 U.S.C. § 523, "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief" under Chapter 7. The term "debt" has been held to be synonymous with the term "claim", as used in the Bankruptcy Code. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Under 11 U.S.C. § 101(5), a claim means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

---

1. In a supplemental certification, counsel for Chartwells asserts that of this amount, $9,428.81 is attributable to pre-petition fees and costs and $71,249.73 accrued post-petition.

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The seminal case in the Third Circuit for determining when a claim "accrues" for purposes of the Bankruptcy Code is *In re M. Frenville Co.,* 744 F.2d 332, 336 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). *See Jones v. Chemetron Corp.,* 212 F.3d 199, 206 (3d Cir.2000) (*Frenville* is "the law of this circuit"). In *Frenville,* the debtor hired a certified public accounting firm to prepare the company's financial statements, which the debtor used in its dealings with several banks. After Frenville's creditors filed an involuntary petition against it, the banks filed suit against the accounting firm alleging that they had relied upon the misrepresentations in the financial statements. The accounting firm sought relief from the automatic stay to include the debtor as a third party defendant for purposes of indemnification or contribution. Recognizing that "[o]nly proceedings that could have been commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed," *Id.* at 335, the court addressed the question of "whether the automatic stay of § 362(a) of the Code is applicable when the debtor's acts which form the basis of a suit occurred prepetition but the actual cause of action which is being instituted did not arise until after the filing of a bankruptcy petition." *Id.* at 334.

■ Focusing on whether the accounting firm held a pre-petition claim to which the automatic stay would apply, the court noted the "very broad" definition of "claim" contained in the Bankruptcy Code. *Id.* at 336. While the accounting firm might appear to have "an unliquidated, contingent, unmatured and disputed claim pre-petition, ... the threshold requirement of a claim must first be met—there must be a 'right to payment'. § 101(4)A.... [W]hen a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" *Id.* at 336–37 (quoting *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)). Turning to New York law, the court determined that a right to payment based on indemnification or contribution arises only when the party seeking that relief is sued directly by others, and at which point the party may then file a third-party complaint for indemnification. Because the first suit was not filed until after the debtor filed for bankruptcy, the claim for indemnity arose postpetition. The court concluded that the accounting firm did not hold a prepetition claim and that the automatic stay did not apply. *See also In re Penn Central Trans. Co.,* 71 F.3d 1113 (3d Cir.1995), *cert. denied,* 517 U.S. 1221, 116 S.Ct. 1851, 134 L.Ed.2d 951 (1996); *In re Remington Rand Corp.,* 836 F.2d 825, 832 (3d Cir.1988) ("a party may have a bankruptcy claim and not possess a cause of action on that claim"); *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

Here, the right to payment is governed under New Jersey CEPA by N.J.S.A. 34:19–6, which provides that:

A court, upon notice of motion in accordance with the Rules Governing the Courts of the State of New Jersey, may also order that reasonable attorneys' fees and court costs be awarded to an

employer if the court determines that an action brought by an employee under this act was without basis in law or in fact. However, an employee shall not be assessed attorneys' fees under this section if, after exercising reasonable and diligent efforts after filing a suit, the employee files a voluntary dismissal concerning the employer, within a reasonable time after determining that the employer would not be found to be liable for damages.

Under this statute, an employer is authorized to apply for attorneys' fees by motion after an employee files a CEPA action. The employer has no "right to payment" of attorneys fees unless and until the employee commences the judicial action. After the CEPA action is commenced, the employer's right to payment is contingent on a judicial determination that the complaint was without basis in law and in fact.

In this case, Gullone filed an action against his former employer, Chartwells, in New Jersey Superior Court on May 3, 2001. In Chartwells' answer, filed on June 12, 2001, it sought dismissal of the complaint as well as an award of costs and attorneys' fees under N.J.S.A. 34:19–6. Both the complaint and the answer were filed pre-petition.

I conclude that Chartwells' right to payment arose when the debtor filed his CEPA action in May 2001. When the debtor filed his bankruptcy petition in September 2001, Chartwells held a pre-petition contingent, unliquidated, disputed claim against the debtor. *See also In re Kirkpatrick,* 216 B.R. 663 (Bankr.M.D.Fla. 1997) (post-petition award of attorneys' fees for a pre-petition suit found to consti-

tute pre-petition contingent, unliquidated claim).

▮▮▮▮ Chartwells contends that because attorneys' fees continued to accrue after the debtor filed his bankruptcy petition, the post-petition fees incurred by Chartwells and ultimately imposed on the debtor should be excluded from the pre-petition claim. This argument must be rejected. The issue of whether an obligation must be designated as a pre-petition or post-petition claim does not depend on when the damages from the harm accrued. Rather, the issue is when the cause of action arose. The cause of action arises when a cognizable "interest" arises, i.e., when "a legal relationship relevant to the purported interest from which the interest may flow" is established. *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d at 943; *In re Radio–Keith–Orpheum Corp.,* 106 F.2d 22, 26–27 (2d Cir.1939), *cert. denied,* 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1940) ("*RKO*").[2] In *Schweitzer,* for example, the legal relationship between the parties which pertained to the cause of action asserted arose upon the enactment of a statute imposing liability upon the former debtor. And in *RKO,* discussed by the Third Circuit in *Schweitzer* and *Penn Central,* the establishment of the pre-petition legal relationship between the debtor and the claimant in the form of guarantor-guarantee was the point at which the contingent claim arose. In *RKO,* the post-petition default of the primary obligor did not reinstate the debtor's pre-petition guarantor obligation, which was discharged in the debtor's confirmed reorganization plan. Similarly, here, the legal relationship between the debtor and Chartwells, giving rise to

---

**2.** *Schweitzer* and *RKO* arose under the Bankruptcy Act of 1898, which defined "claims" as "debts" or "other interests of whatever character." Sec. 77(b). The Third Circuit has opined that the difference between the defini-

tion of a claim under the Bankruptcy Act and under the Bankruptcy Code is "a distinction without a difference." *Penn Central Transportation Co.,* 71 F.3d at 1117.

Chartwells' claim for attorneys' fees, arose by operation of the New Jersey statute, N.J.S.A. 34:19–6, upon the filing of the debtor's CEPA complaint. The fact that the extent of the claim was neither liquidated nor fixed at the time the bankruptcy petition was filed does not alter the conclusion that the claim arose prepetition. 11 U.S.C. § 101(5)(A).

Chartwells' reliance on the cases of *Water Valley Finishing, Williams* and *Hadden* is misplaced, because each of these cases is either factually distinguishable or follows case law contrary to *Frenville.* In *In re Water Valley Finishing, Inc.,* 139 F.3d 325 (2d Cir.1998), the court determined that the post petition award of attorneys' fees could not be considered as a prepetition claim, because the parties did not reasonably contemplate an award of attorneys' fees as a sanction for bad faith litigation at the time the bankruptcy petition was filed or the reorganization plan confirmed. In this case, Chartwells sought attorneys' fees pursuant to the applicable statute pre-petition. The parties could reasonably contemplate that attorneys fees would be awarded to Chartwells if the court determined that the debtor's action was without basis in law or in fact. In *In re Williams,* 213 B.R. 189, 192 (Bankr.M.D.Ga.1997), the debtor's failure to comply with a post-discharge sanction order created a separate claim based on the debtor's post-discharge contumacious acts. And, in *In re Hadden,* 57 B.R. 187 (Bankr.W.D.Wis.1986), a case with similar facts to the facts presented here, the post-petition award of attorneys' fees was based on a contractual right to receive attorneys' fees, which was asserted prepetition. As was the case here, after his bankruptcy filing, the debtor continued to prosecute the breach of contract action. The debtor's action was ultimately dismissed, and an award of attorneys' fees was entered in favor of the defendants. The court divided

the claim for attorneys' fees into fees incurred pre-petition, which could be discharged, and fees incurred postpetition, which were nondischargeable. The articulation of the equities by the *Hadden* court, that if the debtor chooses to pursue pre-petition claims, "he must do so at the risk of incurring the post-petition costs involved in his acts," *Id.* at 190, is sound. However, the *Hadden* result cannot be reconciled with the Third Circuit mandate in *Frenville* to determine when a "right to payment" under state law arises. The *Hadden* court recognized that the defendant's contractual right to receive attorneys' fees incurred pre-petition constituted a claim in bankruptcy, which was contingent upon the defendant's success in the litigation. The defendant's "right to payment" of attorneys' fees arose when the contractual relationship between the debtor and the defendant was forged. The defendant's pre-petition right to payment continued to apply to attorneys' fees incurred after the debtor filed his petition.

Chartwells maintains that the debtor should not be permitted to discharge the award of attorneys' fees because the debtor's failure to mention his bankruptcy until four months after his filing, his actions in continuing to pursue his CEPA claim during and after his bankruptcy, and his failure to bring up the possibility of recourse to his bankruptcy case discharge until after post-judgment discovery had commenced, are all illustrative of the debtor's bad faith. Chartwell relies in large part on *In re Moretti,* 260 B.R. 602 (1st Cir. BAP 2001). However, *Moretti* does not apply here. In *Moretti,* the debtor's quest to add omitted creditors to his petition, after his bankruptcy case was closed, was denied because he could not show excusable neglect for failing to amend his schedules before the case was closed, and because he could not demonstrate cause for

the amendments, as required under FED. R.BANKR.P. 9006(b)(1). In determining that excusable neglect had not been shown, the court considered the fact that the debtor knowingly permitted creditors to proceed with legal action against him, delayed for years before notifying them of his bankruptcy and discharge, causing the creditors to incur significant attorneys' fees. However, the court distinguished between the relief requested by the debtor, i.e., to permit the late amendments of his schedules to add omitted creditors, which is governed by the R.9006(b)(1) requirement of excusable neglect and cause, and the quest to determine the dischargeability of a debt, which was not requested by the debtor in *Moretti.* Here, the debtor does not seek to amend his schedules. Rather, the debtor seeks to declare that the debt due to Chartwells is dischargeable.[3] The *Moretti* court noted that there is no requirement that a debt be scheduled before a party may seek a determination of its dischargeability. *Id.* at 609.

■ Here, the debtor's unscheduled debt was discharged along with the claims he scheduled in his no-asset Chapter 7

case, regardless of Chartwells' assertion that he acted in bad faith in failing to schedule its claim.[4] *Judd v. Wolfe,* 78 F.3d 110, 116 (3d Cir.1996) ("the Bankruptcy Code does not impose a requirement of good faith for the discharge of an omitted debt in a no asset, no bar date case"). *See also In re Alexander,* 300 B.R. 650, 657–58 (Bankr.E.D.Va.2003) ("The Bankruptcy Code does not require any showing that a debtor's omission of a debt was made in good faith in order for that debt to be dischargeable."). As noted above, section 727(b) of the Bankruptcy Code provides that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). The section does not except from discharge debts that are unlisted or unscheduled. *Judd v. Wolfe,* 78 F.3d at 114. Under section 523(a)(3), a section 727 discharge does not discharge a debt that is "neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim." 11 U.S.C. 523(a)(3).[5] In a no-

3. Rule 7001 specifies that a quest to determine the dischargeability of a debt must be brought by the filing of an adversary proceeding. Here, the debtor has filed a motion rather than a complaint. No contest has been raised by Chartwells to the procedure utilized. There is support for the proposition that a court may entertain a motion in lieu of a complaint for the types of relief specified in Rule 7001, *See, e.g., In re Cannonsburg Environ. Assocs., Ltd.,* 72 F.3d 1260, 1264 (6th Cir.1996); *In re Lernout & Hauspie Speech Products, N.V.,* 264 B.R. 336, 340 (Bankr. D.Del.2001). The only issue raised by Chartwells challenging the dischargeability of its debt is Chartwells' contention that the debt arose post-petition. That issue may be resolved by this motion.

4. The debtor denies that he acted in bad faith, asserting that at the time he filed his bankruptcy petition, he viewed the CEPA action as

a potential asset rather than a debt, and viewed Chartwells' quest for attorneys fees in its answer as "highly remote."

5. Section 523(a)(3) provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

...

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsec-

asset Chapter 7 case, the time to permit the timely filing of a proof of claim never expires, because no bar date is set and no proofs of claim are required to be filed. *Id.* Therefore, the section 523(a)(3) exception to the discharge of all pre-petition claims under section 727 does not apply in a no-asset, no bar date Chapter 7 case.

Here, in Gullone's no-asset, no bar date Chapter 7 case, Chartwells' claim, which arose pre-petition but was not yet fixed or liquidated, was discharged by operation of law at the time of Gullone's discharge on August 11, 2002. There has been no allegation that the claim would be nondischargeable under either sections 523(a)(2), (4) or (6).

I conclude that Chartwells' claim against the debtor arose pre-petition and may be discharged. Counsel for the debtor shall prepare an order in conformance with the above opinion.

tion, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3).